Thompson, J.
I think a new trial ought not- to be granted. ■ The circumstances stated in the case, fairly warranted the jury in drawing the conclusion that the defendant ought to be considered as a purchaser, with full knowledge of all the circumstances, relative to the situation of this cotton. Ho time is stated when he made the purchase,, although Mr. Rodman himself, from whom he purchased it, was examined as a witness. It does, however, appear, that it must have been after Foley’s note to Rodman fell due, and had been protested for non-payment, which must have been some- time after the 1st of March, 1802.
The defendant acknowledged that the cotton was first *41 put into his possession, to sell for Mr. Rodman: this could not have been until after Foley’s bankruptcy, because Mr. Rodman himself testified that his determination not to deliver the cotton, was made in consequence of Foley’s becoming a bankrupt. The cotton remained as it was, when Foley made the purchase, until after this period. Rodman finding his note from Foley would not probably bo paid, determined to retain the cotton, and, some time afterwards, must be presumed to have delivered it to the defendant, *first to sell, afterwards to remain as a pledge, but concluding, probably, that an actual sale would be better calculated to secure the cotton against the plaintiff’s claim, such sale was made, so that the defendant ought not to be viewed in a more favorable point of light than Mr. Rodman himself would be were he the defendant. The plaintiffs, however, cannot be considered as standing in the same situation as Foley would, were he plaintiff; they must be viewed as innocent bona fide purchasers. When application was made to them to purchase this cotton, they sent to Rodman and this cotton was shown them-as the property of Foley ; no pretence was made that he had any claim or lien upon it, and it is evident, at that time, he had no such pretensions, for John Rodman swears, that it was not until after Foley became bankrupt that he determined not to deliver the cotton. The plaintiffs, therefore, had every reason to believe, from the conduct of Rodman, that there would be no objections against delivering'this cotton whenever called for.[1] There is no pre- *42 tence of any agreement that the cotton was to remain in his possession as security for Foley’s note, which was payable in sixty days. The contract of sale was complete, ant, the note received as payment, and there can be no doubt that Foley might have legally demanded the goods imme-liately after the purchase. It certainly cannot be pretended, that on the sale of goods upon a credit, the vendor has a right to retain them as security for the payment of the purchase-money. But even admitting that, as against Foley, the goods might be stopped in transitu, it by no means follows, that, as against innocent purchasers, the same doctrine would apply. In the case of Lickbarrow v. Mason, 2 D. & E. 61, -it was decided that a consignor may stop goods in transitu, before they got into the hands of the consignee, in case of his insolvency ; yet if the consignee has assigned the bills of lading to a third person for a valuable consideration, the right of the consignor, as against Such third person, is devested. The right of the vendor to stop goods in transitu, in case of the insolvency of the vendee is a kind of equitable lien adopted by the law, for the purpose of attaining substantial justice, and not on the ground of rescinding the contract. In the case of Lempriere v. Pasley, 7 D. & E. 445 ; 2 D. & E. 490, Ashhurst, J. in delivering the judgment of the *cóurt, laid it down as a fundamental principle, that as between a person who has an equitable lien, and a third person who *43 purchases the thing for valuable consideration, and without notice, the prior equitable lien shall not overreach the title of the vendee. As the plaintiffs in this case have paid a valuable consideration for the goods, and there is no color for imputing to them fraud or notice of any pretended lien by Rodman, a new trial ought not to be granted.
Livingston, J.
Were this a question between Foley and the present defendant, it would not, perhaps, have occasioned much difficulty. I should be inclined to think, that in such case he could not recover, without paying his note given to Rodman, and which was endorsed to Bowne. But when the rights of a fair purchaser intervene, the doctrine of stopping goods in transitu, which has been carried far enough, ought not to be strained in favor of the vendor, or, as is the case here, in favor of a creditor of the vendor to whom they were first pledged, and in satisfaction oí whose demand they were afterwards sold.
There certainly was a sufficient delivery hereto justify a sale by Foley to the plaintiffs. The cotton was shown by Rodman as his, and although the person to whom it was shown did not declare his object, it might reasonably be supposed he wanted to buy it, and yet no caution was given, nor any claim set up to the property by Rodman. After this, it would be hard indeed on the plaintiffs to postpone their right to that of the defendant, who took the property after the sale by Foley, to secure an antecedent debt. In the case of Owenson v. Morse, 7 D. & E. 66, the original purchaser brought his action to recover some articles of plate against the vendor, and set up a delivery of them to an engraver, as a delivery to himself. In such cases a court will go a great way to protect the right of the seller; and Lord Kenyon, considering it as an unjust attempt in the plaintiff to get the goods without paying for them, determined, and so did the other judges, that as the engraver was employed by the defendant, the goods were at *44 most *in transitu, and the price not being paid, he had a right to retain them.
This case, as has been already stated, is very different/ It is that of a bona fide purchaser, to whom, or to whoso agent, the property was shown as Foley’s before the bargain was concluded. After this Rodman had no right to defeat íhé plaintiff’s claim by delivering the property to another, I am of opinion the finding of the jury was right.
Kent, J.
These facts present a struggle between bona fide creditors, which of them shall avoid a loss; and he who has used the best diligence, or has the legal advantage, ought to be preferred.
This case turns upon the question, whether there wa3 a delivery of the cotton by Rodman to Foley. Delivery in a sale, says one of the Civilians, may be either real, by putting the thing sold into the possession, (2 Ersk. 481,) or under the power of the purchaser, or it may be symbolical, when the thing sold does not admit of actual delivery. To illustrate this last instance, it is settled in the English law. agreeably to the rule in the civil law, (Dig. 41, 1, 9, 6; 1 Ersk. 194,) that where goods are ponderous, and incapable of being handed over, there need not be an actual delivery but it may be made by that which is tantamount, such as the delivery of the key of a warehouse, or by delivery of other indicia. But there must be a delivery in the one way or the other, according to the subject matter, or the property is not absolutely devested from the vendor, although the risk may be, in many respects, with the vendee. So in a variety of cases, (1 H. Bl. 363,) delivery may b&presumed from circumstances so as to vest the property in the vendee. If there be a destination of the goods by the vendor to the use of the vendee, by marking them, or putting them up to be delivered, or removing them for that purpose, the vendee may be entitled to act as owner. But in this case of a presumed delivery, the title of the vendor is not devested till the goods have come to the possession of the vendee: (Dig. lib, 19, tit. 1, 13 ; 7 D. & B. 64, 440; 1 Atk. 345 ; 5 D. & E. 490,) and he may, for just cause, re* tract the intended delivery ; he may detain them against the vendee till the price be paid-
in the present case, there was no delivery, in any sense, of the twenty bales of cotton; and as no application was *made to Rodman for a delivery until after the bankruptcy of Boley, he had an equitable lien on the goods for his debt, and that right being accompanied ■ with the actual possession, it is lawful for him to exert it a,gainst the plaintiffs, notwithstanding they were third persons and purchasers from Boley., He had equal equity with them, and in addition to that, he was clothed with the lawful possession, which gave him the paramount claim. To arrest the goods from the vendor under those circumstances, would, in my opinion, be unjust: negligence in this case was imputable to Boley and the plaintiffs. The cotton was suffered to remain in possession of Rodman, without any mark or destination of the property, until the failure of the vendee ; and of two innocent creditors, he who has used the most vigilance, or has the legal advantage, shall' be preferred.
I place my opinion entirely upon the ground that the possession of the cotton never passed from Rodman, and that he did not assign it to the defendant, until after the bankruptcy of Boley. I think, therefore, the defendant has the better title, and that the verdict ought to be set aside, on payment of costs.
New trial refused.

 Declaring a note to be good to one about to purchase it, or standing by in silence when it is transferred fpr consideration, is an estoppel in pais against a debtor. Watson's Ex. v. M'Laren, 19 Wend. 551. To make false statements of the payee respecting paper negotiated by him, available to the holder as an estoppel, so as to prevent such payee from setting up the de-fence of usury, they must have been made to induce the holder to purchase, end have been confided in, and in good faith acted upon by him; he must have heen deceived by them. Truscott v. Davis, 4 Barb. 495. Where a party, either by his declaration or conduct, has induced a third person to act in a particular manner, he will not afterward be permitted to deny tho truth *42 of the admission, if the consequence would be to work an injury to such third person, or one claiming under him; Hazell v. Odell, 3 Hill, 215. But before a party is held to be thus concluded, it must appear: — 1. That he has made an admission which is clearly inconsistent with the evidence which he proposes to give; 2. That the other party has acted upon the admission; and 3. That the latter will be injured by allowing the truth of the admission to be disproved. Ib.
See also with respect to estoppel in pais, Petrie v. Fester, 21 Wend. 172; Foster v. Newland, Id. 94; Demyer v. Souzer, 6 Wend. 436; Ruggles v. Sherman, 14 J. R. 446; Swick v. Sears, 1 Hill, 17 ; Frost v. Saratoga Martual Ins. Co., 5 Denio, 154; Welland Canal Co. v. Hathaway, 8 Wend. 480 Dewey v. Bordwell, 9 Wend. 95.