<div align="right">1820.

SEYMOUR
v.
SEYMOUR.</div>

<div align="center">Decree accordingly.</div>

## W. & D. SEYMOUR *against* J. SEYMOUR and others.

A *surrogate* has concurrent jurisdiction with this Court, to compel administrators to account, and make distribution of the estate.

And where *administrators* have been brought before the *surrogate* who granted the letters of administration, for an account and distribution of the intestate's personal estate, this Court will not, without some special and satisfactory reason, interfere with the proceedings of the surrogate, by granting an injunction, and sustaining a bill for general relief.

A 'bill for *discovery*, in aid of the cause before the *surrogate*, must charge certain facts within the knowledge of the defendant, the disclosure of which is material and necessary to the party's defence in that Court, and that he has no means of showing the facts, without such discovery.

But *it seems*, that where the bill is for discovery merely, and no injunction is asked for, and there is a demurrer to the bill, the Court will not examine so nicely as to the materiality of the discovery.

1820.

SEYMOUR
v.
SEYMOUR.

*May 27th.*

THE bill stated, that the plaintiffs were administrators of the goods and chattels of *Stephen Seymour*, deceased, and that the defendants, claiming distributive shares of the estate, had applied to the *surrogate* of *Ulster* county, from whom they received letters of administration, and sued out a citation to the plaintiffs to appear before him, on a given day, and account for the personal estate in their hands to be administered; that they had appeared and offered to account according to the inventory, but that the defendants had insisted, that they should account, not only for the personal estate inventoried, but for personal property given and delivered by the intestate to the plaintiffs, shortly before his death, and in contemplation of death, and which the plaintiffs claimed as a gift, &c. That the proceedings were postponed by the *surrogate*, until the second day of *June*. That the plaintiffs " were apprehensive that they should not be able to make full proof of the material facts," requisite to protect the property so delivered to them, without a disclosure from the defendants. The bill *prayed* for an injunction to stay further proceedings before the surrogate, and that the plaintiffs be permitted to settle their account as administrators before this Court, as to all the persons who claim distributive shares. The bill, also, prayed process of subpœna, &c.

*P. Ruggles,* on behalf of the plaintiffs, moved for the injunction, according to the prayer of the bill.

THE CHANCELLOR. The object of this bill, is not simply discovery, but relief. It seeks to transfer to this Court the jurisdiction of the whole matter of account between the administrators and the next of kin; and that too after the cognisance of the case has duly attached before the surrogate. It is not to be disputed, that the surrogate is clothed with powers competent to settle the accounts of the estate,

and to decree and enforce distribution; and there is no reason assigned why his jurisdiction should be superseded, and the entire cognisance of the case transferred to this Court. The *act relative to the Court of Probates*, &c. (1 *N. R. L.* 448. s. 11, 12, 13.) declares, " that it shall be lawful for the surrogate granting administration, to call such administrators to account, &c. and upon hearing, and due consideration, to order distribution, &c., and the same distribution to decree and settle, and to compel such administrators to observe and pay the same, and to enforce such decree by imprisonment, &c., and to compel witnesses to attend and be sworn," &c. The surrogate has so far a concurrent jurisdiction with this Court; and without some special reason set forth in the bill, I am not inclined to interfere with the ordinary exercise of such a power; because, I do not, at present, perceive, that such an interference would be warranted. There is nothing, *in this case*, that would not apply to *every case;* and it would be assuming exclusive jurisdiction over the subject matter.

But if this be considered as a mere bill of discovery, in aid of the cause before the surrogate, it is essentially defective. There is not sufficient ground laid, for staying a trial at law, or a proceeding in another Court. The bill ought to have charged, that certain facts were within the knowledge of the defendants, and that a disclosure from them was requisite. The bill or affidavit to support the injunction, must state the belief of the plaintiff, that the answer would furnish discovery material to the defence, and that the plaintiff had not the means of obtaining the facts without such discovery. This was the doctrine of the case of *Gelston* v. *Hoyt*, (1 *Johns. Ch. Rep.* 543.) and it is supported by other decisions. (*Appleyard* v. *Seton*, 16 *Ves.* 223. *Duvals* v. *Ross*, 2 *Munf.* 290.) A general demurrer will lie to a bill, that seeks immaterial discovery; (8 *Bro. P. C.* 161.) and it is not material, unless it really be want-

<div style="text-align: right">

1820.

SEYMOUR
v.
SEYMOUR.

ed for the defence at law.   In this case, the plaintiff is only *apprehensive* that he should not be able to make *full proof* of the material facts.   This is too feeble an averment, a suggestion of too doubtful an import, and of too diffident a pretension, to justify an injunction staying a proceeding before a competent tribunal.   Probably, if the question on the materiality of the discovery sought, had arisen upon a demurrer to the bill, and an injunction staying the suit at law in the mean time had not been asked for, the materiality of the discovery might not have been very nicely examined.   Lord *Thurlow* said, in such a case, upon demurrer, (*Bishop of London* v. *Fytche*, 1 *Bro. C. C.* 69.) that " whether it was material or not, was chiefly for the plaintiff to judge, for he must pay the costs of the application. It would remain with another Court to say how far it was material."

Motion denied.