# WILLIAM R. COBB *vs.* RUFUS HASKELL.

Where a bill of sale was made of a quantity of boards to secure a debt due, and the vendor, pointing towards the boards then lying in several piles in a lumber-yard at a distance but within sight, said to the vendee, there are your boards, take care of them, and make the most of them; and the vendee thereupon went away, and suffered them to remain in the same place, without any other act on his part, for two months, when they were attached as the property of the vendor; *it was held,* that there was no such delivery, as would enable the vendee to hold the boards against the attaching officer.

EXCEPTIONS from the Court of Common Pleas, *Whitman C. J.* presiding.

*Trespass* for taking and carrying away a quantity of pine boards, alleged to be the property of the plaintiff. The defence was, that the property was attached by a deputy sheriff, whose servant the defendant was, as the property of one *Haley,* the owner. The plaintiff claimed under a bill of sale from *Haley,* dated *Nov.* 3, 1835, made to secure a just debt then due, and the defendant under an attachment, made *Jan.* 4, 1836, on a writ in favor of a *bona fide* creditor. The officer removed the property, when it was attached by him, and the case turned on the question, whether there was such a *delivery* of the boards to the plaintiff, as the law requires to hold them against an after attachment. On the third of *November,* the day the bill of sale was made, the plaintiff, with another person, who was a witness in the case, went to the store of *Haley* to obtain security, and the defendant offered to convey the boards to him. The bill of sale was then made in the store. At this time, the boards were lying in piles about a lumber-yard, scattered over a considerable space of ground about the mill, one pile being very near the store. The witness stated, that the road they passed to the store led through the lumber-yard; "that after the bill of sale was executed, the plaintiff, *Haley,* and the witness, went out of the store, and that *Haley* then pointed with his hand from the door of his store towards the mill-yard, where part of the boards were, and told the plaintiff, *that there was the lumber he billed to him,* and said, that H was the mark, and that he wished him to take them, and do as he pleased with them; said, that he wished the plaintiff to take them into his own hands, and appropriate them

towards the payment of his debt." The witness further stated, "that a considerable part of the mill-yard, where the boards were, was in sight of the store; that it was not an inclosure, but occupied a considerable space around the mill; that on their leaving the store, *Haley* went with them some rods, passing along in the mill-yard, where the boards were, when *Haley* turned into another road and went to his house, and plaintiff and witness went the other way to their chaise; that *Haley* did not go with them to any of the piles in particular, but they were talking of the amount and quality, as they passed along, but no account of the quantity was taken at that time; that no mark was put on the boards by the plaintiff, and no survey of them had; that the plaintiff left them, as they were, and went away, requesting the witness to keep his eye on them, and see how *Haley* got along; but that the plaintiff did not leave the lumber particularly in his charge, and had no recollection of going there afterwards until they were attached." The store of *Haley* was in *Minot*, the witness lived two miles from that place, and the plaintiff lived in *Portland.* The boards remained in the same situation from the time the bill of sale was given until the time of the attachment. It was also proved, that after the bill of sale and before the attachment, *Haley* stated to a third person, that the boards were the property of the plaintiff. The Judge ruled, that the plaintiff had not proved such a delivery of the boards by *Haley* to him, as would enable him to hold them against an after attaching creditor; to which the plaintiff excepted.

The case was submitted to the opinion of the Court on the briefs of the counsel.

*W. P. Fessenden*, for the plaintiffs, contended, that there was a sufficient delivery of the boards to enable the plaintiff to hold them, as a security for his debt. To show that the bill of sale alone was sufficient for that purpose, as between the parties, he cited *Buffington* v. *Curtis*, 15 *Mass. R.* 528. To show, that enough was done to take the sale out of the operation of the statute of frauds, and to fortify his views of the principle on which a delivery was originally required, he cited *Chaplin* v. *Rogers*, 1 *East*, 192; *Phillips* v. *Hunnewell*, 4 *Greenl.* 376; *Edwards* v. *Harben*, 2 *T. R.* 507; *Brooks* v. *Powers*, 15 *Mass. R.* 244; *note to Big. Digest*, 687. To show, that here was a sufficient delivery

to vest the property in the vendee against every one; that what was done was a sufficient compliance with the form required by the decisions, he cited and commented on *Shumway* v. *Rutter*, 8 *Pick.* 446; *Searle* v. *Keeves*, 2 *Esp. R.* 598; *Chaplin* v. *Rogers*, 1 *East*, 192; *Elmore* v. *Stone*, 1 *Taunt. R.* 458; *Bailey* v. *Ogden*, 3 *Johns. R.* 399; *Hunn* v. *Bowne*, 2 *Caines*, 38; *Rice* v. *Austin*, 17 *Mass. R.* 197; *Jewett* v. *Warren*, 12 *Mass. R.* 300; *Haskell* v. *Greely*, 3 *Greenl.* 425; *Lansing* v. *Turner*, 2 *Johns. R.* 16.

*Codman*, for the defendant, contended, that a delivery was necessary to complete the sale of a chattel, so that the vendee may hold it against a subsequent purchaser, or attaching creditor, ignorant of the sale; and that no delivery, such as the law requires, was made in this case. He cited *Gardner* v. *Howland*, 2 *Pick.* 599; *Flagg* v. *Dryden*, 7 *Pick.* 52; *Butterfield* v. *Baker*, 5 *Pick.* 522; *Quincy* v. *Tilton*, 5 *Greenl.* 277; *Phillips* v. *Hunnewell*, 4 *Greenl.* 376; *Jewett* v. *Warren*, 12 *Mass. R.* 300; *Rice* v. *Austin* 17 *Mass. R.* 197; *Lanfear* v. *Sumner, ibid.* 110.

After a continuance, the opinion of the Court was drawn up by

WESTON C. J. — By a series of decisions, cited for the defendant, a delivery from *Haley*, the debtor, to the plaintiff, was necessary to give him a title against an attaching creditor. And the argument for the plaintiff is, that there was a sufficient delivery. The lumber was pointed out to the plaintiff, and he was informed by what mark it might be known. From the testimony it appears, that the plaintiff was requested to take it away, and make the best of it. But the plaintiff took no part of the lumber, nor exercised any act of ownership over it, but left it in the debtor's possession as before, up to the time of the attachment, a period of two months. Considering, however, the nature and position of the property, it comes very nearly up to what has been required, to put it out of the reach of other creditors; but upon the whole, in our judgment, there was not quite enough done to produce this effect; and these transactions are so likely to occasion false credit and fraud upon creditors, that the doctrine of constructive delivery ought not to be extended.

In *Searle et al.* v. *Keeves*, 2 *Esp. R.* 598, when the warehouse man received the order, he became the depositary for the vendee, and there was thus a change of possession. In *Chaplin* v. *Rogers*, 1 *East*, 192, the vendee had sold part of the hay, and the second purchaser had actually taken it away. In *Elmore* v. *Stone*, 1 *Taunt.* 458, the plaintiff, the vendor of the horses, was a livery stable keeper, and the defendant had ordered them to be there kept at livery for him. *Bayley J.*, in *Howe* v. *Palmer*, 3 *B. & Ald.* 321, says, that case goes as far as any one should, and that the Court ought not to go one step beyond it, and that it turned upon the fact, that expense was incurred by direction of the buyer.

In *Hunn* v. *Bowne*, 2 *Caines*, 38, one *Foley* had purchased a quantity of cotton of one *Rodman*, and had given his note for it, but left it in *Rodman's* store. *Foley* employed *Huchinson*, a broker, to sell it. *Huchinson* called on *Rodman*, desiring to see *Foley's* cotton. *Rodman* directed one of his clerks to show it, which he did in a fire proof store. *Huchinson* then bought the cotton of *Foley*, who gave an order for it on *Rodman*. Before presentment, *Foley* failed, and *Rodman* refused to deliver, and sold it to the defendant. The plaintiff, having title under *Huchinson*, prevailed, the jury being of opinion that the defendant purchased, with a full knowledge of these facts. *Lansing* v. *Turner*, 2 *Johns.* 16, was a case between the original parties, for a quantity of beef, which had been bought and paid for.

In *Bailey* v. *Ogden*, 3 *Johns.* 394, an agreement with the vendor, about the storage of the goods, and the delivery of the export entry to the agent of the vendee, were held not to be sufficiently certain, to amount to a constructive delivery, or to afford an indicium of ownership. In *Rice* v. *Austin*, 17 *Mass. R.* 197, the timber in question, was shipped to the plaintiff with an invoice and bill of lading, on his account and risk, and when it arrived, he ordered it to the navy yard in *Charlestown.* This was held sufficient evidence of possession in him, considering the nature of the property. In *Shumway et al.* v. *Rutter*, 8 *Pick.* 443, there had been a mixed possession, the vendee having taken a part of his purchase for his own use.

The strongest case, and that most nearly resembling the one before us, is that of *Jewett* v. *Warren*, 12 *Mass. R.* 300. A bill of

sale was there made of a quantity of logs.   The vendor directed an agent to deliver them to the plaintiff.   The agent showed them to him, they being then rafted and lying in a boom.   This was held to be a sufficient delivery ; the plaintiff doing as others did with similar property, suffering it to remain in the boom, until he should have occasion to use it.   The boom was a common place of security, which the plaintiff was as much entitled to use as the vendor ; and there was all the change of possession, of which the property was susceptible.

In the case under consideration, there was not the slightest indication of a transfer of the property.   It remained as before in the debtor's mill-yard, still bearing the mark it then had, being the initial letter of the debtor's surname.   And thus it continued, without a single movement on the part of the plaintiff, to avail himself of the property.   To sustain his title, under these circumstances, against an attaching creditor, would be going farther than can be justified by the principles, by which cases of this sort have been governed.

*Exceptions overruled.*