NIAGARA COUNTY NATIONAL BANK AND OTHERS, APPELLANTS, *v.* JARVIS LORD, WILLIAM H. ROSS-LEWIN, MERCY T. ROSS-LEWIN, HIS WIFE, AND OTHERS, RESPONDENTS, IMPLEADED, ETC.

*Mortgage of chattels to secure a debt — what constitutes a delivery of the property — what facts show that the mortgagee acted in good faith — an assignee of the mortgagor cannot attack it because of a failure to file it — a mortgage given by one partner, to secure any balance that may be due to the other, is not a firm asset — what amendment to a complaint should not be allowed by a referee — accounting by a general assignee.*

This action was brought by judgment creditors of the firm of Jarvis Lord & Co. against its general assignee and others to have certain property formerly belonging to the firm treated as firm assets and distributed among its creditors. In June, 1873, the firm had 720 barrels of whisky in a United States bonded warehouse. To secure notes discounted by the Bank of Monroe the firm gave to it an instrument acknowledging the receipt in store at its distillery of 720 barrels of whisky for account of the bank, and deliverable only on the surrender of the receipt. It recited that it was given as a general continuing collateral security for any and all debts which were then or might thereafter become due from the firm to the bank. From time to time the firm withdrew portions of this whisky, giving similar receipts to the bank for the remainder, which was always of sufficient value to equal the debts due to it. In the fall of 1877 the whisky being reduced to 292 barrels a similar receipt was given to the bank, and shortly thereafter the keys of the warehouse were delivered to and retained by it, so that no one without its consent could have access to the

whisky except by a forcible entry.  On March 21, 1878, the firm made a general assignment.  Thereafter the whisky was sold by the bank and the proceeds applied upon the debts due to it from the firm.

*Held*, that the delivery of the receipt vested the title to the whisky in the bank for the purposes stated in it.

That the transfer was made to and received by the bank in good faith and without any intent to defraud the creditors of the firm.

That the fact that the instrument was not filed as a chattel mortgage did not render it fraudulent or void as to the assignee.

That the claim of the plaintiffs could not be sustained.

Lord, was to furnish the capital for the firm, and his partner Lewin, was to devote his personal attention to the business; and to secure any balance that might be found due to Lord on a final settlement, Lewin agreed to and did procure a mortgage to be executed and delivered to Lord to secure any such balance.

*Held*, that this mortgage was not a firm asset, but belonged to Lord's individual creditors.

Upon the trial before a referee the plaintiff's counsel asked for leave to amend the complaint "by adding such allegations of a general creditor's bill as would enable them to reach the said Ross-Lewin mortgage, and the rights and property thereby secured, as creditors in their own behalf."

*Held*, that the referee properly refused to allow the amendment to be made.

That the application should have been made at a Special Term.

At the time of the commencement of this action proceedings were pending in a County Court for an accounting by the assignee.  The plaintiff urged that the accounts of the assignee should be taken in this action.

*Held*, that the court properly refused to allow this to be done; that it should not in this case interfere with the proceedings pending in a County Court.

Appeal by the plaintiffs from a judgment dismissing the complaint, entered on the report of a referee.

In 1872 the defendants Jarvis Lord and William H. R. Lewin entered into a copartnership for the purpose of carrying on the distillery business, etc., in the firm name of Jarvis Lord & Co., and continued in business until 21st March, 1878, when the firm made a general assignment to defendant Brackett for the benefit of creditors. Both members of the firm were then individually insolvent.  In January, 1880, the assignee instituted proceedings in the County Court of Monroe county, pursuant to Laws 1877, chapter 466, etc., for a settlement of his accounts, and during the pendency of that proceeding, and in October, 1880, this action was commenced by the plaintiffs, who were judgment creditors of that firm, charging amongst other things that certain whisky, the proceeds of which were claimed and had been received by the Bank of Monroe, and a certain mortgage made by

the defendant Lewin to Lord, were assets of the firm and should be treated and distributed amongst the creditors as such under the assignment. The referee held against the plaintiffs on those propositions and dismissed their complaint, and this appeal is taken from the judgment entered on his report.

*Timothy E. Ellsworth*, for the appellants.

*James Breck Perkins*, for the respondents, the Bank of Monroe and James Brackett, as assignee, etc.

*William Nathaniel Cogswell*, for the respondents, Lord and Seward.

*George T. Parker*, for the respondent Mercy T. Ross-Lewin.

BRADLEY, J. :

At the time the firm of Jarvis Lord & Co. was formed, it was understood that Lord would furnish capital to some extent to organize and carry on the business, and Lewin would devote his personal attention to it, and that to secure Lord for any balance that might be due him from Lewin on final settlement, the defendants Lewin should make to him a mortgage. And pursuant to that understanding they then did make to him a mortgage reciting the formation of the partnership, and that one condition of it was that they should make and deliver to him a mortgage for the purpose before mentioned, and stating that the grant was intended as security for the payment by William H. R. Lewin to Lord of the amount, if any, that should or might be found due from him to the latter upon a final closing of the partnership and settlement of its business, etc.

In June, 1873, the firm had manufactured 720 barrels of whisky, which was then in bonded warehouse, under control of United States revenue officers, and remained so until the government tax on it was paid. The firm obtained at the Bank of Monroe discount of their notes for considerable amount, and in 1873, while the whisky was in bond, the firm to secure the payment of the notes, made to this bank an instrument, as follows :

"Received in store at our distillery warehouse, Cartersville, N Y., 720 barrels of whisky, stored for account of the Bank of Monroe, of Rochester, and deliverable only upon the surrender of this

receipt, and this receipt is given to said bank as a general continuing collateral security for any and all debts, notes, drafts, bills of exchange or overdrafts which may be due to said bank, now or at any time hereafter by us.

(Signed)  " JARVIS LORD & CO."

From time to time thereafter the firm took from such quantity of whisky portions of it, and made similar receipts to the bank for the reduced quantity remaining ; but at all times the quantity so remaining was in value deemed sufficient to cover the amount of the firm liabilities to the bank.  In the fall of 1877, the quantity of that whisky remaining in store at Cartersville, was 292 barrels, and then the firm made and delivered to the bank a receipt in all respects like that before set forth, except that " 292 barrels " occupied the place of the " 720 barrels " in it, and shortly thereafter the keys to the warehouse containing the whisky, were by the firm delivered to, and taken by the bank, which continued to retain them, and nobody else could, except by forcible entry, have access to the whisky without the consent of the bank.  After the last mentioned receipt was made, the firm took none of the whisky.

When the assignment of 21st March, 1878, was made to Brackett in trust for creditors, the firm owed the Bank of Monroe on notes, $26,000, which were renewals of others held by the bank at the time the last mentioned warehouse receipt (so-called) was made, and the firm was also liable to the bank in an additional sum for advances made on drafts drawn by the firm on persons who failed to pay.

Insurance had been taken on the whisky payable in case of loss to the bank.  About the 25th March, 1878, ninety-eight barrels of it were destroyed by fire, and for which loss the bank collected insurance $9,594.52 and applied that sum on the liabilities to it of the firm. The remainder of the whisky was then, by direction of the bank, removed from Carterville to the city of Rochester.  And being advised by most of the creditors of the firm (including the plaintiffs) to close out the business of the firm by carrying it on for a time (to which its members also consented) the assignee, for that purpose, from time to time purchased of the bank portions of this whisky at reasonable price, which purchases together were ninety-five barrels, for which he paid the bank $8,618.41 ; and the residue,

ninety-nine barrels, were sold by the direction of the bank at auction and the proceeds received by it.

The whole amount received by the bank from the 292 barrels was $25,397.49, which was applied on the liabilities of the firm to it. The learned counsel for the appellants contends that the assignee was entitled to this property as assets of the firm, passing to him by the assignment, and asks that it be so adjudged to the end that the bank be required to restore the proceeds to the assignee for distribution by the latter pursuant to the direction of the assignment.

This contention is based upon the charge that the transfer made by the so termed warehouse receipt was fraudulent as against the creditors of the firm. That instrument may not, in the strictly legal sense of the term, be a warehouse receipt, which is generally understood to be a receipt made by a warehouse-keeper or wharfinger, on the reception of goods, or when called for by the person entitled to it, on the production of which by him, or any one to whom it may have been transferred, the delivery of the goods may be required. And it partakes something of the character of a bill of lading, so that a transfer of it passes title to the property and the receiptor at once becomes the bailee of the transferee of the receipt.

But as between the parties to it this receipt was effectual and vested in the bank the title for the purposes expressed in it. (*Gibson* v. *Stevens*, 8 How. [U. S.], 384; *Dows* v. *Perrin*, 16 N. Y., 325; *Dows* v. *Greene*, 32 Barb., 490; affirmed, 24 N. Y., 638; *Hoyt* v. *Hartford F. Ins. Co.*, 26 Hun, 416.) And for that purpose it need not come within the provisions of the Laws of 1858 (chap. 326), nor does it require the aid of that act to give it effect as between them. (*F. and M. National Bank* v. *Lang*, 87 N. Y., 209, 215.)

It differs as between the parties to it from that mentioned in *Yenni* v. *McNamee* (45 N. Y., 621), which was practically made by the owner through his superintendent to himself by his direction, but the transfer of it by him as security was deemed good as between the parties to the transfer for that purpose.

The assignee, without the aid of a judgment, had the right to assail the transfer to the bank for fraud, and successfully if fraudulent as against the creditors of the firm. (Laws 1858, chap. 314, § 1; *Southard* v. *Benner*, 72 N. Y., 424.)

And assuming that there was no immediate delivery and continued change of possession of the property, the presumption would be that the sale to the bank was fraudulent and void as against the creditors of the firm, and such situation would be conclusive evidence of fraud unless it should be made to appear on the part of the bank that it was made in good faith and without any intent to defraud such creditors.   (2 R. S., 136, § 5.)

It appears that the debt due from the firm to the bank was a valid one, created by advances actually made and evidenced by notes, etc.; that the transfer (as it imported) was made to secure the payment of such debt, and although the firm appropriated a portion of the whisky included in the transfers preceding the last one, there is no evidence other than inferences arising from the fact of doing so that there was any understanding or consent on the part of the bank that it might be done.   There is no occasion afforded by the evidence for the inference that there was any purpose on its part in taking any of them other than to secure the payment of the debt due to it and protect itself.   And the inference is reasonable that the firm took from the warehouse some of the property solely by reason of desire and opportunity without the aid of any understanding with or consent of the bank.   And that on taking the last transfer of the quantity reduced to 292 barrels, to protect itself against future reduction of the security, the bank took and assumed the exclusive control and custody, so far as it could be done, by having the only means other than forcible, of access to it.

This evinced a purpose of preserving its security; and this last transfer may be treated as distinct and independent of any preceding it and characterized solely by its attending circumstances.   The property on a fair disposition produced insufficient proceeds to pay the debt which it was held to secure.   The conclusion that this transfer was made to the bank, and taken in good faith and without any intent to defraud the creditors of the firm, is fairly justified. (*Thompson* v. *Blanchard*, 4 N. Y., 303; *Mitchell* v. *West*, 55 id., 107.)   But in view of the character, quantity and situation of the property, there may be said to have been delivery of it made to and taken by the bank.   And although the delivery must be of the actual possession, and a constructive one will not answer to constitute a delivery and possession in such cases (*Crandall* v. *Brown*,

18 Hun, 461; *Topping* v. *Lynch*, 2 Robt., 484; *Steele* v. *Benham*, 84 N. Y., 634; *Stimson* v. *Wrigley*, 86 id., 332, 337), the delivery of the keys of the warehouse and the surrender of the custody and control to the bank, and so recognized, may be treated as a delivery and possession. (*Hunn* v. *Bowne*, 2 Caines, 44; *Wilkes* v. *Ferris*, 5 Johns., 335; *Bank of Rochester* v. *Jones*, 4 N. Y., 506; *Stimson* v. *Wrigley*, 86 id., 337, 338.) And the fact that delivery was delayed a short time does not defeat the force of it. (*Brown* v. *Platt*, 8 Bosw., 324.) But when some time intervenes between delivery of a chattel mortgage and possession of the property the presumption of fraud may arise from that delay or omission. (*Stimson* v. *Wrigley*, 86 N. Y., 332.)

The transaction being free from actual fraud, and no rights of creditors having intervened by way of lien on the property, the intention of the parties to vest in the bank the right to the whisky as security, would be effectuated and become perfect on taking possession, although subsequent to the time of delivery of the receipt. (*Parshall* v. *Eggert*, 54 N. Y., 18.)

In the view taken of the instrument and its effect, the question of the actual possession of the property does not seem important. The earlier cases holding the necessity of explaining the continued possession of the vendor or mortgagor, in addition to the establishment of the fact that the sale was made in good faith and without any intent to defraud, have been overruled. (*Mitchell* v. *West*, 55 N. Y., 107.) The judgment of the Niagara County National Bank was recovered 19th June, 1878, and those of the other plaintiffs in September, 1878, and March, 1879. And the plaintiffs by their complaint found the claim against the validity of the transfer of the whisky to the Monroe County Bank, upon and through the right and duty of the assignee and in aid of him and his accounting.

Their learned counsel contends that within the meaning of the statute, the invalidity of a chattel mortgage as against creditors, etc., by reason of its not having been filed, is based on the ground of fraud, and that by reason of such omission it is deemed fraudulent. This contention is not supported. That statute provides that such mortgage, when not accompanied by delivery and followed by continued change of possession of the property, shall be absolutely void as against the creditors of the mortgagor, and as

against subsequent purchasers, etc., in good faith, unless the mortgage or a copy be filed in the office of town clerk, etc. (Laws 1833, chap, 279, § 1.) This statute is independent of 2 Revised Statutes (136, § 5), and the invalidity of the mortgage as against creditors, etc., because not filed is not dependent on fraud, but the purpose of the requirement was to furnish means of notice or information of the lien and protection, and the consequence of the omission as against creditors and purchasers in good faith is in the nature of a penalty for such neglect. ( *Wood* v. *Lowry*, 17 Wend., 492; *Smith* v. *Acker*, 23 id., 658, 659; *Meech* v. *Patchin*, 14 N. Y., 71, 72; *Southard* v. *Benner*, 72 id., 428, 429; *Ball* v. *Slafter*, 26 Hun, 355.)

The case of *Brackett* v. *Harvey* (25 Barb., 502), in which remark was made to the contrary and supporting a recovery by an assignee, etc., was reversed. (91 N. Y., 214.) The provision of the act of 1833 declaring that an unfiled mortgage shall be void as against a creditor and a purchaser, etc., in good faith, is peremptory and without any reference to fraud or good faith on the part of the mortgagee. The relief as for fraud and the presumption afforded by continued possession of the mortgagor are given by 2 Revised Statutes (136, § 5).

The creditor who can avail himself of the omission to file a mortgage is he who has a judgment, and proceeds upon that and obtains a lien. A creditor at large cannot. (*Thompson* v. *Van Vechten*, 27 N. Y., 568; *Jones* v. *Graham*, 77 id., 628.) The assignee of Jarvis, Lord & Co. was not a purchaser in good faith, and had no right, based upon the mere fact of omission to file the instrument in question, to assail it for that reason. (*Van Heusen* v. *Radcliff*, 17 N. Y., 580; *Southard* v. *Benner*, 72 id., 424.)

This action was commenced after the proceeds of the whisky had been received and applied by the bank. The plaintiffs could not therefore, through their judgments or by means of processes issued on them, acquire any lien upon the property so as to contest title to it, as creditors upon a claim so founded. And in view of the support given to the conclusion of the referee that the transfer to the bank was in good faith and without any intent to defraud creditors, etc., it is unnecessary to consider the contention of the plaintiffs' counsel in respect to the right on the part of the plaintiffs to pursue by this action the proceeds of the whisky.

It seems clear that the mortgage of Lewin to Lord was not a

partnership asset, and therefore could not go to the assignee for the benefit of the creditors of the firm under the assignment, which included only partnership property. *Seward* v. *Huntington*, 94 N. Y., 104. That mortgage was the individual property of Lord and in respect to that his creditors have the preference. (*Hewitt* v. *Northrup*, 75 N. Y., 506, 509. While the members of a partnership may voluntarily administer and distribute their property among creditors without reference to the classes of them, and a creditor of the firm may by legal process appropriate the property of an individual member of the firm for payment of his debt, the rule is otherwise in equity; there the rights of the two classes of creditors respectively will be observed, so that the firm property will not be available to the creditors of the individual members, nor that of the latter to the partnership creditors, until the claims of those first entitled of the respective classes are discharged. (*Wilder* v. *Keeler*, 3 Paige, 167; *Kirby* v. *Schoonmaker*, 3 Barb. Ch., 46; *Meech* v. *Allen*, 17 N. Y., 300, 302; *Jackson* v. *Cornell*, 1 Sandf. Ch., 348.) The fact that there were partnership assets from which the assignee made dividends to the firm creditors renders it unnecessary to inquire whether the exception to this rule, recognized by the English courts, to the effect that where there is no joint estate the firm creditors may share ratably with the creditors of the individual members in the estate of the latter (*Gray* v. *Chiswell*, 9 Ves., 124; *McCulloch* v. *Dashiel*, 1 Harr. & G. [Md.], 96; *Ex parte Hayden*, 1 Bro. C. C., 454; *Abell, Ex parte*, 4 Ves., 838; *Kensington, Ex parte*, 14 id., 447; *Kendall, Ex parte*, 17 id., 521) has been or should be applied in this State.

The complaint being so framed as to relate only to the joint estate of which this mortgage is charged to be a part, it would be departing from it very considerably to proceed to take an account of the liabilities of one of the members of the firm with a view to ascertain whether anything from his property could be made applicable to the payment of the firm debts due the plaintiffs. The plaintiffs' counsel at the trial asked leave to amend the complaint "by adding such allegations of a general creditor's bill as would enable them to reach the said Ross-Lewin mortgage and the rights and property thereby secured, as creditors in their own behalf." This was refused by the referee on the ground of want of power.

This amendment formally inserted in the complaint to the extent asked for, would produce a different cause of action and controversy from those presented and permitted by the complaint and issues in the action, and in which other parties' rights might be involved, and does not seem to come within that permitted to. be allowed and made at the trial (Code Civ. Pro., § 723), and was properly refused by the referee. The application to amend was one which properly should be made at Special Term only, where the incidents and consequences attending the amendment could be considered and provided for. (*Hochstetter* v. *Isaacs,* 44 How., 495 ; *Chittenango C. Co.* v. *Stewart,* 67 *Barb.,* 423.)

On the part of the plaintiffs it is urged that the accounting of the assignee should be taken in this action. At the time of the commencement of the action the proceeding for the accounting was pending, and had considerably progressed in the County Court. While the power is vested in the County Court to take and settle such accounts it is not exclusive, but in its jurisdiction is concurrent with that of this court. (Laws 1877, chap. 466 ; 1878, chap. 318.) And that of the County Court having been first acquired will not be interrupted or restrained in the proceeding unless for some substantial reason. (*Chipman* v. *Montgomery,* 63 N. Y., 222; *Schuehle* v. *Reiman,* 86 N. Y., 270, 273.) But this court very properly may and will entertain jurisdiction and exercise its powers by action for purposes of discovery, and in aid of proceedings for accounting, etc., in another tribunal having jurisdiction and limited powers. (*Seymour* v. *Seymour,* 4 Johns. Ch., 409.)

Upon the evidence no occasion appears for restraining the proceeding in the County Court, and transferring the accounting of the assignee from that to this court. There seem to be no errors in the rulings at the trial to the prejudice of the plaintiffs. And none of the several exceptions to the findings of the referee, and to his refusals to find, require any further consideration.

The judgment should be affirmed, with costs.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

Judgment affirmed, with costs.