(63 App. Div. 18.)

### WESTERFIELD et al. v. ROGERS et al.

(Supreme Court, Appellate Division, First Department.   July 9, 1901.)

1. COURTS—SURROGATE'S COURT—CONCURRENT JURISDICTION FIRST ACQUIRED —EQUITY.

   Where the questions involved in a suit to remove trustees under a will, and for an accounting, and for the appointment of a receiver of the trust funds, and for an injunction to restrain the trustees from interfering with such funds, were litigated in prior proceedings in a surrogate's court on substantially the same evidence, that court having first acquired jurisdiction, its jurisdiction was exclusive, and therefore the equity suit must be dismissed.

71 N.Y.S.—26

**2. SAME—PARTIES.**

Where the surrogate's court had jurisdiction of the cause, and obtained possession of the case prior to the filing of suit in equity for the same relief, the fact that all of the persons interested were not parties to the proceedings in the surrogate's court did not entitle plaintiff to maintain the equity suit, but all proper parties should be brought into the surrogate's court.

Appeal from special term, New York county.

Action by Mary J. Westerfield and another against Thomas Rogers and others. From a judgment in favor of plaintiffs, Thomas Rogers and others appeal. Appeal dismissed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Edward Winslow Paige, for appellants.
William G. Wilson, for respondents.
Theodore M. Taft, for respondent John Westerfield.

O'BRIEN, J. This is an action in equity begun in 1897 by the plaintiffs as beneficiaries under a will, and the prayer for judgment is as follows:

"That the said defendants William Cauldwell and Thomas Rogers be removed from their position as trustees under all and any of the trusts existing under and by virtue of the last will and testament of said John Rogers, deceased, and that said William Shillaber, Jr., be permitted to retire from and resign his position as trustee under the same, or in default of such resignation be removed therefrom, and that some suitable person or persons be appointed as trustee or trustees to execute all and singular the said trusts in the place and stead of the said trustees so removed or resigning; that during the pendency of this action, and until the further order of the court, a receiver may be appointed to take possession and management of each and all the aforesaid trust funds, properties, and estates, under the direction of the court, and, under like direction, to take such measures and proceedings as may be necessary or proper for the securing and recovering the amount of any and all deficits therein; that it may be adjudged that the interest of said defendant Thomas Rogers in said trust of the residuary estate of said testator, both real and personal, is liable to make good to the trusts created by said will in favor of these plaintiffs the amount of such defalcation, with interest and costs, and that the said trustees or their successors be adjudged to apply the same, or so much thereof as may be necessary, to that purpose, and that it may be adjudged that the said defendant Thomas Rogers has no interest in or claim upon any of said residuary estate of said testator, real or personal, until the amount of such deficiency shall have been fully paid and satisfied; that during the pendency of this action, and until the further order of the court, the said defendants William Cauldwell, Thomas Rogers, and William Shillaber, Jr., may be enjoined and restrained from disposing of or in any manner interfering with any of the property or assets of the said trust funds or estates; that all such accountings and other proceedings may be had as may be necessary and proper for the ascertainment or protection of the rights of the plaintiffs or of any other of the parties to the action."

The relief thus asked for has been sought by these same plaintiffs in various proceedings previously brought in the surrogate's court of the county of Westchester, and part of the judgment desired, such as the removal of the trustees, has been obtained. The fundamental facts involved here have already been examined and discussed at

length, and the principal questions have been passed upon both by the surrogate's court and the appellate division of the Second department. See In re Westerfield, 32 App. Div. 324, 53 N. Y. Supp. 25; Id., 40 App. Div. 610, 57 N. Y. Supp. 1150; and Id., 48 App. Div. 542, 63 N. Y. Supp. 10. From the last-mentioned decision (48 App. Div. 542, 63 N. Y. Supp. 10) an appeal was taken upon questions certified to the court of appeals, but that court refused to determine the same, as the decree entered thereon was not a final decree. 163 N. Y. 209, 57 N. E. 403. Under the order of the surrogate opening the first decree after decision by the appellate division, the surrogate's court proceeded to take further proof upon the merits. From such order, under which proof was taken, the defendant Thomas Rogers appealed to the appellate division, but such appeal was not heard until after a hearing had been had upon the decree entered by the surrogate after such proof under the order had been taken. The question arising upon the appeal from the order opening the first decree, under which further proof was taken, has recently been considered by the appellate division of the Second department, and also upon a motion to resettle the order opening the decree of March 17, 1897, in part, and upon a motion asking the appellate division to make up and enter a final decree upon the record as presented to that court, upon which the surrogate based his second decree. The questions thus presented have been recently decided by the Second department, and in an opinion handed down with the decision all of the questions raised in this action have been reviewed, and the history of the litigation fully stated. This decision clearly and effectually disposes of the subject-matter. (Opinion filed May 31, 1901.) 70 N. Y. Supp. 641. After the proceedings were brought in the surrogate's court, the present action was commenced in equity; and, although the early decisions of the Second department were mentioned by the referee, the conclusions reached were not followed by him. It is suggested that the present record contains other and additional evidence which supports the conclusions of the referee, and justifies the bringing of this action. The testimony given on the trial before the referee, for the most part, is identical with that given before the surrogate; the only new evidence which we can discover being that relating to a certain trust deed. As to this we agree with what was said by the learned judge of the Second department in the recent opinion, which refers to this equity suit and to this new evidence,—that it is in no sense substantial, important, or controlling upon the issues here involved. We are not disposed, however, to discuss this or any other feature presented upon this appeal, for the reason that we think this action should not be entertained. The questions here presented are exactly those which have been considered and disposed of in the surrogate's court and upon appeals to the appellate division in the Second department, and, unless it were made to appear that there were some questions which could not be disposed of in the proceedings in the surrogate's court upon the accounting, then that court, having acquired jurisdiction of the subject-matter, should be allowed to retain jurisdiction, and the same questions should not again be liti-

gated in this equity suit in the supreme court. On this subject it was said in Schuehle v. Reiman, 86 N. Y. 273:

"Where the object of two legal proceedings is the same, convenience as well as a proper regard for the rights of debtor and creditor require, if possible, that the fund in which both are interested should be subjected to diminution by one litigation only, and the parties themselves spared the unnecessary labor and expense of conducting two controversies over the same matter. It would seem, also, that, if both tribunals whose interference has been invoked have equal or concurrent jurisdiction, it should continue to be exercised in that one whose process was first issued."

That the surrogate has power to pass upon the various questions here raised is not disputed; and, under such circumstances, as said in Widmayer v. Widmayer, 76 Hun, 254, 27 N. Y. Supp. 773:

"It is undoubtedly true that the policy of this court is not to entertain jurisdiction of proceedings and actions of which statutory tribunals have been given cognizance by special enactment."

The mere fact that the equity branch of the court might have been resorted to in the first instance is of no moment, and this point is brought out in the case of Garlock v. Vandevort, 128 N. Y. 378, 28 N. E. 599, in the following language:

"There is no question but that the supreme court could entertain jurisdiction of an action brought by an executor to determine the force and validity of such provision in a will, but it is not exclusive jurisdiction. The surrogate had the power as well to construe the will in that respect. * * * There does not seem to have been any necessity nor any good ground for invoking the jurisdiction of the supreme court, and thereby delaying the proceedings before the surrogate, and burdening the estate with further expense of litigation."

And in Chipman v. Montgomery, 63 N. Y. 221, it was said:

"The laws give full powers to the surrogate's court to call executors and administrators to an account, and to distribute the estate among the next of kin, and to pass upon every question that may arise, whether directly or indirectly, in the progress of the accounting and final distribution. That is the appropriate tribunal, conceding that, to a limited extent, concurrent jurisdiction exists in a court of equity. The jurisdiction of courts of equity in respect to accounts in the course of administration and the marshaling of assets grew out of the defects in the process and powers of ecclesiastical courts and the early courts of probate. The jurisdiction over cases of administration was made to rest upon the notion of a constructive trust in executors and administrators, as well as the necessity of taking accounts and compelling a discovery. 1 Story, Eq. Jur. § 534. But these considerations do not apply in ordinary cases to the settlement of estates in this state, and to withdraw a case of mere settlement of an estate, disconnected with the enforcement of a special and express trust, as distinguished from what is called a 'constructive trust' in all administrations, from the tribunal created for that purpose, with ample powers, special reasons should be assigned, and facts stated to show that full and complete justice cannot be done in that court. Upon a final accounting, * * * creditors, as well as next of kin and legatees, are entitled to be heard, and they may much more easily be cited before a surrogate than made parties to a formal suit in equity. * * * In Seymour v. Seymour, 4 Johns. Ch. 409, the court refused to take jurisdiction and interfere with the ordinary exercise of the powers of the surrogate in the settlement of the accounts of administrators and the distribution of the estate, without some special reason set forth in the bill."

The principles thus expressed received exhaustive consideration in Conover v. Mayor, etc., 25 Barb. 514, wherein the learned judge writing the opinion says, after reviewing the history of the case:

"The necessity for something which shall confine the litigation in this matter to some one court is most apparent from the above narrative. The two courts—this and the common pleas—have decided the same question differently, and are diametrically opposed to each other. * * * The facts on which the two decisions proceed differ but little, if at all, and that little, if either way, is in the direction opposite to the difference of the decisions and the opinions. * * * Here are the decisions of the two courts directly in conflict on the same subject-matter. What is correct is not a matter of inquiry here. We are not reviewing either of those decisions. * * * The instance I have given shows the impracticability of continuing parallel litigation of the same matters in the two courts. Indeed, evidence or illustration of such a fact seems hardly necessary, for it is within the observation of every one that, on the complicated and vexed questions which come under the investigation of courts of justice (and this is certainly embraced in that class), courts, like individual minds, must differ frequently. Every dissent of a member of a court and every reversal by an appellate court of the decision of its inferior are instances of judicial opinion on exactly the same facts, stated in exactly the same words; and neither of these cases of difference is of rare occurrence. Both, on the contrary, are very common. The two courts thus pursuing opposite courses of decision, it is manifestly desirable that the litigation in one should be suspended, and the whole controversy carried to its conclusion in the other. It is more than desirable. It is indispensable to a reasonable, orderly, and decorous administration of justice. * * * Assuming that the two courts have jurisdiction to the same extent, and can administer justice and with equal facility and benefit, the rule that the court first having cognizance of the subject shall retain it, and draw the litigation wholly to itself, seems to be properly applicable. It is perfectly free from odium; is consistent with the fullest comity and the most delicate respect for the other tribunal. If there be no reason in the construction of the courts why one is more competent, under all circumstances, existing or likely to arise, to assume the whole of this controversy and conduct it to an issue, than the other, priority in acquiring possession of the case may with propriety be allowed to determine in which it shall proceed."

Were the rule different, it is evident that there would be no end to litigation, and no finality of judgments. In the present case, also, we have the anomaly of two judgments being entered in different courts in two departments, both deciding the same questions differently. To sanction such a practice would be to impede the orderly administration of justice. The only distinction urged upon our attention is that in the present action all parties are before the court, whereas they were not all brought in before the surrogate; but, if the questions are the same, as we think they are, and the subject-matter affected is identical, as admittedly it is, no good reason is given why they might not have been brought before the surrogate. This point was alluded to in one of the cases cited, and it was clearly presented and disposed of in Re Ayrault, 81 Hun, 109, 30 N. Y. Supp. 654, where it was said:

"The jurisdiction of the supreme court, being first obtained, was necessarily exclusive. It is impossible that two tribunals should entertain jurisdiction of the administration and settlement of the same estate at the same time,—a proposition which seems to require no citation of authorities in its support. But to the application of this proposition the petitioner objects that he was not made a party. * * * If it were

necessary for him to be a party to that action in order to obtain the rights of those whom he represents, he may still become such by intervening therein."

We find, therefore, no justification for interfering in any way with what has already been decided and disposed of by the courts of the Second department, nor even discussing the findings as made upon the trial herein, although, in passing, it may not be improper to say that, were we to entertain this action, we should feel bound to follow the adjudication of the Second department.

We think that the supreme court should not entertain the action, and that it should, together with this appeal, be dismissed, with costs. All concur.