(48 App. Div. 542.)

### In re WESTERFIELD et al.

(Supreme Court, Appellate Division, Second Department. March 6, 1900.)

1. LIABILITY OF TRUSTEE—NONPARTICIPATION IN TRUST.
    If one of the trustees of an express trust is actually and deliberately excluded, with the knowledge and approval of all the beneficiaries, from any active participation in the management of the trust, or custody of the money or securities, which are handled and controlled during a long period by the other trustee alone, he will incur no liability for misappropriation of the funds by the active trustee, of which he had no actual or constructive notice.

2. SAME—MISCONDUCT OF CO-TRUSTEE—KNOWLEDGE.
    Where one of two trustees, who has been excluded, with the knowledge and approval of the beneficiaries, from any active participation in the management of the trust, becomes aware of misappropriation by the co-trustee, and neglects to inform the beneficiaries, he is liable to the latter for such misappropriation only in case loss by reason of such misappropriation could have been prevented or recouped if such information had been promptly given.

3. SAME—ADVANCEMENTS OUT OF FUNDS OF ESTATE.
    Where trust funds have been advanced with the consent and co-operation of the beneficiaries, to carry property for the benefit of the estate, the trustee cannot be held liable therefor to the beneficiaries.

4. SAME—INTEREST.
    Where a trustee is held liable for the devastavit of a co-trustee, interest should be allowed on the amounts charged against him at 5 per cent., without semiannual rests.

Appeal from surrogate's court, Westchester county.

Application by Mary J. Westerfield and another for the removal of William Cauldwell and another as trustees. Appeal from an order charging Thomas Rogers with sums misappropriated by his co-trustee. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Edward Winslow Paige (Rastus S. Ransom and Henry L. Stimson, on the brief), for appellants.

William G. Wilson, for respondents.

Wilbur Larremore, for respondent Westerfield.

HATCH, J. When the several appeals in this matter were before us upon a former hearing, we held that, upon the proof then appearing, Thomas Rogers was not liable for the devastavit of the estate by his co-trustee, for the reason that he was excluded from the management of the same so far as the custody of the securities, the

reception of its moneys, and their disbursement in the course of the administration of the trust. The reasons for such conclusion are fully set out in our former opinion, and need not be again rehearsed. In re Westerfield, 32 App. Div. 324, 53 N. Y. Supp. 25. After such decision a motion was made for a reargument of the question of the liability of Thomas Rogers for the devastavit of his co-trustee, or, in the alternative, that the order of this court should be so far modified as to direct a further hearing before the surrogate of Westchester county upon such question. This motion was based upon the affidavits of the petitioners, and William G. Wilson and Hamilton Wallis, attorneys for such petitioners. The application and the accompanying affidavits received the careful attention of this court, and, after consultation, the motion was denied. No written or oral opinion was expressed upon the denial of such motion, but our conclusion proceeded upon the ground that, if all of the matters stated in the affidavits were taken as true, they did not so far change or modify the essential facts upon which our decision was based as to call for the application of a different rule of law or change in the decision announced. Subsequently moneys of the estate belonging to Thomas Rogers came into the hands of the substituted trustee, and a motion was made to authorize the trustee to make application of such moneys in reduction of the obligation which Thomas Rogers was under to the estate. By order of the surrogate, these moneys were directed to be applied upon the indebtedness due from the trustees to the estate, and this indebtedness by such order was made to include the devastavit of the trustee Cauldwell. Upon appeal, this order was modified, and in the decision and written opinion of this court the limitation of liability which the decree of March, 1897, imposed upon Thomas Rogers was again stated, and the modification of the order directed such moneys to be applied upon such limited liability. In re Westerfield, 40 App. Div. 610, 57 N. Y. Supp. 1150. The liability of Rogers thereunder was absolute for the sum of $20,000. Beyond that it was not so far binding upon him as to preclude his showing facts in exoneration of liability. This was for the reason that this sum represented the moneys of the estate stated to be on hand at that time, and as this was reported to be on hand by Rogers, and the decree charged him with it, he was liable therefor. As Cauldwell held all of the funds and securities of the estate stated in the account, and misappropriated them, we said that Thomas Rogers might show, if he could, that he was not legally responsible therefor. This we thought to be a familiar rule of law. Sutherland v. Brush, 7 Johns. Ch. 17; Lacey v. Davis, 5 Redf. Sur. 301, where many cases are reviewed. The rule applicable to testamentary trustees in this respect is not different from that which applies to executors. Kip's Adm'rs v. Deniston, 4 Johns. 23; Ormiston v. Olcott, 84 N. Y. 339; Wilmerding v. McKesson, 103 N. Y. 329, 8 N. E. 665; Bruen v. Gillet, 115 N. Y. 10, 21 N. E. 676. After our decision denying the petitioners' motion for a reargument, or for leave to open the decree and take further proof, they applied to the surrogate to open the decree and make further proof upon the subject of Thomas Rogers' liability for the devastavit of Cauldwell. This motion having been granted, further proof was

taken in respect thereto. It appeared upon such hearing that the item of $20,000 had been restored by Cauldwell to the estate after the rendition of the account, and to this extent, at least, Rogers was relieved. It was further testified by Mrs. Westerfield and by Miss Rogers that they never denied right in Thomas Rogers to participate in the active management of the estate, but expected that he would act. It is evident from their examination, however, that each was quite familiar with the source of revenue of the estate, the amount they were each entitled to receive therefrom, and that Cauldwell was in the active management of the estate. It seems to us beyond reason to think that Miss Rogers, who lived with her mother, and Mrs. Westerfield, who was importuning her mother to be appointed a trustee in place of Columbus Rogers, did not canvass the management of this estate, and who should have charge of it. They did not, it is true, adopt any formal resolution that Thomas should not manage the trust, but they were evidently determined that he should have as little to do therewith as possible. Mrs. Westerfield does not deny that she said of Thomas that he was a drunkard and a spendthrift; that he had not taken advantage of any of his business opportunities, and had wasted all of his own money; and, when she failed of appointment as trustee, the mother procured Judge Gifford to write her: "In view of the fact that so competent, responsible, and prudent a man as Mr. Cauldwell is now acting as trustee, I advised her not to complicate the estate by appointing you." When it was clear that Columbus Rogers excluded Thomas from the management of the estate, except so far as his act was a practical necessity, and that the transfer to Cauldwell was evidently intended to continue the management in him as it had been previously in Columbus, we think such situation was understood by all. It had existed since 1876, and was so fortified by the course of management that no mere words can overthrow it. Thomas Rogers had been appointed by his father a trustee. He was tolerated as such, and permitted to perform some small duties by Columbus, but his advice was not acted upon, his requests were denied, and, for all practical purposes, this situation was expected to and did continue under Cauldwell. We have before observed, and now reiterate, that under the circumstances, if Thomas Rogers had at any time prior to December, 1895, invoked legal remedies to be admitted to the active management of this trust upon the facts appearing as they then did, no court would have been justified in making substantial change in the existing order, and a sound discretion would have continued the administration of the trust as it prior thereto had been and was then being administered, not only for the protection of the adult cestuis que trustent, but for that of the remainder-men as well. In re Adler, 60 Hun, 481, 15 N. Y. Supp. 227. There is therefore nothing in the additional evidence which seems to require any departure from the views which we have previously announced. It is said, however, that it was the duty of Thomas Rogers to immediately discover to his cestuis que trustent the fact of the devastavit by Cauldwell. Undoubtedly he ought. But did his failure so to charge him conclusively with liability for the acts of Cauldwell? If by immediate disclosure the

estate could have protected itself and saved loss, then Rogers is properly so charged; if the loss could not have been recouped, and Rogers' acts did not cause further loss, then he is not so chargeable. There is nothing in the case to show that any course which might have been taken would have secured more from Cauldwell than was secured. Rogers has been charged by this court with all of the moneys which were put into the Cauldwell property, and this would seem to leave the estate as secure as it would have been had Thomas Rogers made immediate disclosure.

It is said, however, that the act of concealment charges Rogers with liability as matter of law. In support of this proposition, the learned surrogate cites Perry, Trusts, § 419; Lewin, Trusts, p. 274. Nothing is made to appear upon this argument which adds to the strength of these authorities upon this question. The doctrine is without application to the facts of this case. Both writers cite the case of Boardman v. Mosman, 1 Brown, Ch. 68, as authority for the text. The facts in that case were that one trustee sold certain stock to the knowledge of his co-trustee at the time of the sale. The latter concealed the sale from the knowledge of the cestui que trust, and advanced to her £500, which she supposed would enable her to prevent a sale of the stock. The money realized upon the sale came to the use of the co-trustee and his partner. It was held that the co-trustee was liable equally with the trustee who made the sale. It is evident that liability could easily have been predicated upon other grounds than concealment. There was not only privity in knowledge of the transaction, but there was personal misappropriation of the funds, accompanied by actual deceit. It is clear, therefore, that mere concealment of a devastavit, from which no pecuniary loss arose, and which was not known when the act was committed, does not suffice to establish liability, under this authority. It was evidently not the intention of the writers of these books to lay down such proposition as a rule of law. The concealment of a transaction of this character must work some injury, before liability can be predicated thereon. Such was our former holding, and such is our present view.

The learned surrogate in rendering his decision has, with his usual and uniform painstaking care, re-examined the whole case, and expressed his views thereon with great clearness, fullness, and ability. We have read with much interest all of the opinions in which he has expressed his views upon the facts, and wherein he has made application of the rules of law which he deemed applicable thereto. Through inadvertence, probably, no reference is made in the opinions below to either of the former decisions of this court, or to the opinions delivered thereon when the decisions were made. It is evident that the rules of law which were therein announced could not have been kept in mind, and for the time being were forgotten when the decree below was made. The conclusions therein reached cannot stand if the determination announced by this court be followed. With the greatest respect for the views of the learned surrogate, and after attentive consideration of his argument, we conclude that the decree which has been entered, so far as it charges Thomas Rogers with liability for the devastavit of the estate prior to December, 1895, can-

not be sustained. Our reasons for this conclusion are found expressed herein and in our former opinions.

This brings us to a consideration of the particular questions raised by the appellants wherein they claim that the decree erroneously charges Thomas Rogers with certain other sums not embraced in the devastavit committed prior to December, 1895. The surrogate has found that Cauldwell took from the trust estate, about January 1, 1897, $5,000, and the decree charges Thomas Rogers with this sum. We can find no evidence sufficient to sustain this finding or the decree based thereon. There does not seem to be dispute of fact concerning it. What Cauldwell did was to make an entry in the books of having received $5,000 as interest. In fact, he received no such sum, nor did it go into the bank or otherwise become credited to the estate. It appears to have been a mere bookkeeping entry, false in fact, and cannot constitute a charge against Thomas Rogers. There was evidence, although contradictory, from which the surrogate was authorized to find that Cauldwell communicated the fact of the devastavit to Thomas Rogers prior to the 11th day of December, 1895; this being the date upon which Cauldwell took the last $10,000. It was therefore proper to charge this sum against Thomas Rogers. Whether the latter should be credited with one-third of the sums which have been paid in upon the Cauldwell properties is a matter which we are presently unable to determine. The principle upon which this part of the account should be made up is not difficult to state. If these sums were taken from the corpus or principal of the estate, and Thomas Rogers had a one-third interest therein, then the investment in these properties would represent one-third of his own moneys, and for that sum he would not be chargeable. If, however, Thomas Rogers had withdrawn from the estate his one-third, then the whole amount must have come from the other two-thirds interest, and he would be properly chargeable with the whole. It may be that this question is settled by the facts which appear in this record, but it has not been pointed out, and, if it had, we might not then be able to determine the same accurately or apportion it correctly. We do not feel called upon, if able, to state this account, and separate therefrom the extent of Thomas Rogers' interest in the principal, if any, which was used, or determine the precise interest of the other trusts in the advancements which were made. It is clear that Thomas Rogers is not to be again charged for any of his own money, if such there be, which he put into the Cauldwell property, nor can he escape payment of the principal sums of the other trust estates which were used. In view of the disposition of the case, this matter can be determined upon a readjustment of the accounts before the surrogate, where an accountant may be able to separate them.

So far as the sums of money from the estate have been advanced by Trustee Shillebar to carry the Cauldwell properties, they have been so advanced upon the consent and co-operation of the petitioners, and with the full knowledge of all concerned. As to the petitioners, we do not think that Thomas Rogers can be charged with the whole of this sum. These sums of money have been advanced for the benefit of all the interests, and with the consent of all the parties. In

securing this property to the estate, Thomas Rogers evidently exercised his best judgment, and acted in good faith and under the advice of counsel. When the new trustee entered upon his duties he found that money was needed to carry the property. In what was done in this connection all acted, and all must accept the responsibility therefor. The new trustee and the petitioners did not need to advance any more money unless they chose. The property could have been sold without further advancements, but if, thereafter, it was agreed to advance further moneys, then we think that each one assumed responsibility therefor. Of course, as to the remainder-men, Thomas Rogers must stand sponsor for this act, but as to the petitioners we do not thing that he is so burdened. Upon a sale of the premises, undoubtedly these last advances will be required to be first paid, but for this the property is answerable, and Thomas Rogers cannot be made to bear the whole burden.

The learned surrogate has allowed interest upon the several sums charged against Thomas Rogers at legal rates, with semiannual rests. Our previous decisions indicate the views which this court holds as to the character of the acts of Thomas Rogers. Holding these views, we think the allowance of interest against him at the legal rates, with semiannual rests, is wrong. The interest should be computed in accordance with the rule announced in Wilmerding v. McKesson, 103 N. Y. 329, 8 N. E. 665; King v. Talbot, 40 N. Y. 76; and Williamson v. Williamson, 6 Paige, 298.

We think the surrogate was authorized to direct a sale of the premises through the trustee, and that the latter can convey a good title. The legal estate was vested in the trustees by the trust clause of the will, and the power of sale thereunder is very broad. Taken in connection with the other parts of the will, we think it was the scheme of the testator to confer power upon the trustees to convert into money any part of his real estate, and that this was a continuing power under the will, and now exists. If this be so, whether we assume that an estate was vested in the legatees under the will or not, the power to sell remains (Taber v. Willets, 1 App. Div. 285, 37 N. Y. Supp. 233, affirmed 153 N. Y. 663, 48 N. E. 1107, on opinion below; Mellen v. Mellen, 139 N. Y. 210, 34 N. E. 925); and this is the power which the surrogate has directed shall be executed for the benefit of the devisees under the will, for the purpose of carrying out the scheme of the testator.

It follows that the decree should be reversed, and the proceeding remitted to the surrogate of Westchester county for disposition in accordance with the rules laid down in this opinion. All concur.