Mary J. Westerfield et al., Appellants, *v.* Thomas Rogers, Individually, and as Trustee under the Will of Jason Rogers, Deceased, et al., Respondents, Impleaded with Others.

1. Appeal — Dismissal — Vacation of Judgment. The Appellate Division cannot, after dismissing an appeal upon the facts and the law, vacate and set aside the judgment, since a dismissal of the appeal deprives it of any further jurisdiction over the judgment or proceedings.

2. Judgment — Reversal on Facts. A judgment cannot be reversed on the facts by the Appellate Division where all the facts are of record and uncontroverted.

3. Courts — Exclusiveness of Jurisdiction. An action in equity to remove trustees and to charge the interest of one of them in the trust estate with an amount misappropriated by his cotrustee may be entertained by the Supreme Court where there is a question as to the extent of the trustee's interest under the trust deed, although a proceeding for an intermediate accounting of the trustees is pending in the Surrogate's Court, and though proceedings were subsequently instituted therein for the removal of the trustees on account of their misconduct in appropriating the trust funds, whereby a part of the relief sought in the equity action was obtained.

4. Question of Fact — Unanimous Affirmance. Whether the beneficiaries under a trust deed excluded from any care or control of the trust estates a trustee, sought to be held liable for sums misappropriated by a cotrustee, is a question of fact upon which the unanimous decision of the Appellate Division is final.

5. Judgment — Res Adjudicata — Courts. The final determination of the Appellate Division on appeal from the decision of the surrogate, as to the liability of a trustee for funds misappropriated by his cotrustee, is *res adjudicata* and binding upon the referee and the Supreme Court, in an action subsequently brought therein to remove the trustees and to charge

the interest of one of them in the trust estate with the amount of the defalcation.

6. TRUSTEES — DEFALCATION OF — HOW PROCEEDS OF PROPERTY TURNED OVER AS SECURITY THEREFOR SHOULD BE APPLIED. Where a trustee of an estate, instead of reporting a defalcation of a cotrustee to the beneficiaries of the trust, kept it secret for more than a year while endeavoring to make something out of property turned over by the cotrustee in order to save him from loss and disgrace, and joined with him in appropriating large sums from the trust estate for the purpose of preserving and improving such property, there should be paid out of the proceeds of the sale of the property after it had been turned over to the successor of such trustees, upon their removal, first, the amount paid by the new trustee, with the consent of the beneficiaries of the trust, for the preservation of the property, the remainder thereof, if any, to be applied upon the funds appropriated by the defaulting trustee prior to the discovery of his defalcation, and, if any then remains, to apply it upon the joint indebtedness of the two trustees.

*Westerfield* v. *Rogers*, 63 App. Div. 18, reversed.

(Argued December 15, 1902; decided March 24, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 30, 1901, dismissing appeals thereto and vacating and setting aside a judgment in favor of plaintiffs entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Hamilton Wallis* for appellants. This court is not ousted of its jurisdiction to determine the questions raised by this appeal, by the recital in the order of the Appellate Division that the action is dismissed upon the facts, as well as upon the aw. (*Otten* v. *M. R. Co.*, 150 N. Y. 395; *Hirshfeld* v. 1*Fitzgerald*, 157 N. Y. 166; *Griggs* v. *Day*, 158 N. Y. 1; *Benedict* v. *Arnoux*, 154 N. Y. 715; *Snyder* v. *Seaman*, 157 N. Y. 449; *Guernsey* v. *Miller*, 80 N. Y. 181; *Astor* v. *L'Amoreux*, 8 N. Y. 107; *Griffin* v. *Marquardt*, 17 N. Y. 28; *Edmonston* v. *McLoud*, 16 N. Y. 543; *Stowell* v. *Hazlett*, 57 N. Y. 637; *Cuff* v. *Dorland*, 57 N. Y. 560.) The court erred in dismissing the action upon the law. (*Christy* v.

*Libby,* 5 Abb. Pr. [N. S.] 200 ; *Wager* v. *Wager,* 87 N. Y. 167 ; *Sanders* v. *Soutter,* 126 N. Y. 193 ; *Coffin* v. *G. R. Co.,* 136 N. Y. 655 ; *James* v. *Work,* 70 Hun, 296 ; *Dawley* v. *Brown,* 79 N. Y. 390 ; *Stowell* v. *Chamberlain,* 60 N. Y. 272 ; *Geery* v. *Webster,* 11 Hun, 428 ; *Matter of Hood,* 27 Hun, 579 ; *Parker* v. *Selye,* 3 App. Div. 149.) The judgment entered upon the report of the referee was right. (*Earle* v. *Earle,* 93 N. Y. 104 ; *Matter of Rogers,* 161 N. Y. 108 ; *Matter of Westerfield,* 32 App. Div. 324 ; *Aurora City* v. *West,* 7 Wall. 82.)

*Edward Winslow Paige, Rastus S. Ransom, Henry L. Stimson* and *Douglas Campbell* for respondents. The court of the surrogate of Westchester county had first and exclusive jurisdiction, and this action was, therefore, properly dismissed. (*Matter of Ayrault,* 146 N. Y. 389.) Thomas Rogers was erroneously charged with the $144,000 taken by Cauldwell. (*Wilmerding* v. *McKesson,* 103 N. Y. 329 ; *Sherman* v. *Page,* 85 N. Y. 123 ; *Croft* v. *Williams,* 38 N. Y. 394 ; *Bruen* v. *Gillett,* 115 N. Y. 10 ; *Nantz* v. *Oakley,* 120 N. Y. 84 ; *Cocks* v. *Haviland,* 124 N. Y. 426 ; *Purdy* v. *Lynch,* 145 N. Y. 462 ; *Earle* v. *Earle,* 93 N. Y. 104 ; *Adair* v. *Brimmer,* 74 N. Y. 539.)

HAIGHT, J. The facts, so far as they will be discussed by us, are without substantial dispute and are in substance as follows :

Jason Rogers died at Morrisania, Westchester county, where he resided, August 25th, 1868, leaving him surviving his widow, Mary Ann Rogers, and Mary J. Rogers, now Westerfield, Flora E. Rogers and Thomas Rogers his only children and heirs at law. At the time of his death he was possessed of a large estate. He left a last will and testament which was duly admitted to probate in Westchester county as a will of real and personal property. By it he, among other bequests, created three trusts ; one for the benefit of his daughter Mary J. Rogers, now Westerfield, during life, with

remainder to her children, should she leave any; one for the benefit of his daughter Flora E. Rogers; and the third, which was to be composed of his residuary estate, for the benefit of his widow and his three children. He provided that after the death of his widow one-third of his residuary estate should be paid over and conveyed to his son Thomas Rogers, and that the other two-thirds should remain in trust for the benefit of his daughters. The testator concluded his will by naming his three brothers and his son Thomas executors and trustees under the will. His brother Columbus B. Rogers and his son Thomas Rogers alone qualified. The estate was settled in due course of time by the executors and passed into their hands as trustees. On the 7th day of June, 1886, Columbus B. Rogers resigned as trustee, and thereupon pursuant to a power given to the widow in the will she appointed William Cauldwell, the father-in-law of Thomas Rogers, as trustee in place of Columbus B. Rogers, who thereupon accounted and turned over to the new trustee and Thomas Rogers all of the assets belonging to the three trust estates. Thereupon the moneys of these trusts were deposited in the Central Trust Company in the city of New York in the name of William Cauldwell trustee alone, and the securities belonging to the trusts were placed in a vault in the National Park Bank in the city of New York to which Cauldwell alone had access.

Some time prior to the year 1882, Thomas Rogers married the daughter of William Cauldwell, and on the 23d of January of that year he executed and delivered to his father-in-law an instrument in writing, under seal, in which Cauldwell joined, whereby, after reciting some of the provisions of his father's will, and his desire to provide for his wife and to pay certain debts out of the estate and income to which he might be entitled by inheritance, or under the provisions of his father's will, and upon the express consideration of one dollar and natural love and affection for his wife and children, he gave, granted, bargained, sold and conveyed to Cauldwell all of the share or net income of the general residuary estate of his father, accrued or accruing, which he then had or to which

he was or might be entitled under the provisions of his
father's will; and also his share or part of the said residuary
estate of his father to which he was or might become entitled,
upon trust to collect the rents, issues and profits of the estate
and to pay his indebtedness to his mother and to one Robert
S. Hughes to whom he was indebted in the sum of $35,635.09
and interest; that out of the balance, if any, of the personal
property, and if not sufficient then out of the real estate, he
was directed to set apart the sum of $50,000 as a trust in
favor of the wife of Thomas Rogers during her life, and of
himself in case he survived her, with remainder to their
children. Nothing appears to have been done under this
trust until after the defalcation of Cauldwell, hereinafter
described, had become known, when Cauldwell resigned and
appointed J. S. Rogers, son of Thomas Rogers, as such trustee.

After Cauldwell had been appointed trustee in place of
Columbus B. Rogers and the moneys and securities had been
taken possession of by him, he from time to time withdrew
moneys belonging to the trust estates and applied the same to
his own use. In February, 1892, he took from the securities
deposited in the vault belonging to the Flora E. Rogers
trust $23,000 in United States 4% bonds, which he sold for
$26,795.00, and loaned the same to Thomas Rogers upon a
mortgage given by him to the trustee upon his undivided
interest in the real estate left by his father and which was
included in the Cauldwell trust for the benefit of his wife and
children. In September, 1893, Cauldwell and Rogers filed
their accounts with the surrogate as trustees, and asked for a
judicial settlement of their accounts as such to that time.
These accounts were verified by them. At that time Cauld-
well had appropriated $20,000 of the trust fund to his own
use, but this sum was subsequently restored by him to the
trust estates. In the accounts so filed by the trustees it
appeared that large amounts of money had been received by
them in the distribution of the assets of the Rogers Locomo-
tive & Machine Works, which was then in liquidation, and
a question arose as to whether the funds paid over upon the

liquidation of that corporation were principal or income, which had to be determined by the courts, and, therefore, the accounts were not finally settled and adjusted until 1897.

Shortly after Cauldwell had returned the $20,000 appropriated by him to the trust estates, he again commenced to withdraw and appropriate to his own use the moneys of the estates, and so continued until the 8th day of December, 1895, at which time he disclosed to his son-in-law Rogers, the cotrustee, the fact that he had so drawn and appropriated the moneys of the estates, which at that time amounted to $131,778.53. He was then in want of more money and he arranged with Rogers to deed to them, as trustees of the estates, certain real property owned by him, including the Hotel Empire in the city of New York; and thereupon further sums were drawn out of the estates, with the consent of Rogers, which brought up the funds of the estates appropriated by them to the sum of $197,000. The property conveyed to the trustees was heavily incumbered by mortgages. Upon the Hotel Empire there was a first mortgage of $450,000 and a second mortgage of $60,000, and upon the other real estate turned over to the trustees there was a mortgage of $10,000. They then concluded to purchase the second mortgage upon the Hotel Empire of $60,000 which the holder had offered to sell for $52,000; and other moneys were needed for taxes and the preservation of the property, and thereupon other properties owned by Cauldwell were transferred to the trustees and still further sums taken from the estates by the trustees, amounting in the aggregate to upwards of $300,000. The appropriation of these moneys by Cauldwell was not disclosed to the plaintiffs in this action until about the middle of April, 1897, more than fifteen months after Cauldwell had advised Thomas Rogers of his appropriation of the moneys of the estates.

After the decree had been entered upon settling the accounts of the trustees rendered in 1893, the plaintiffs petitioned the Surrogate's Court for an intermediate accounting of the trustees from the date of their prior account, and such account

was ordered to be filed by the surrogate.  Pending these pro-
ceedings the plaintiffs first learned of the appropriation of the
funds of the trust estates by the trustees.  Thereupon this
action was brought on the 17th day of August, 1897, in which
the children of Mrs. Westerfield and of Thomas Rogers were
made parties, and in which the plaintiffs demanded a judg-
ment that the trustees William Cauldwell and Thomas Rogers
be removed as such trustees; that some suitable person or
persons be appointed in their places; that a receiver be
appointed during the pendency of the action; that it be
adjudged that the interest of Thomas Rogers in the trust
residuary estate, both real and personal, be charged as liable
to make good to the trust estates the amount of the defalca-
tion, with interest and costs, and that their successor be
adjudged to apply the same to that purpose.  An injunction
and other relief was demanded, including such other and
further relief as may be just and proper.  To this complaint
answers were interposed by the defendants Cauldwell and
Rogers and by the children of Thomas Rogers, in which the
conveyance to Cauldwell by Thomas Rogers in 1882 creating
a trust in favor of his wife and children alluded to was set up
as a defense to the relief asked for in the complaint.

After the commencement of this action and in February,
1898, the plaintiffs petitioned the Surrogate's Court for an
order removing Cauldwell and Rogers as trustees, and upon
that petition proceedings were had resulting in a decree, bear-
ing date the 20th day of April, 1898, removing the defendants
Cauldwell and Rogers as trustees and directing them forth-
with to account to the court as such, excepting so far as they
had already had their accounts passed and allowed.  There-
upon the trustee Rogers filed an account purporting to be an
account of his proceedings as trustee from April 13th, 1897,
to the date of his removal on April 20th, 1898.  And there-
after in the proceedings in the Surrogate's Court this account
and the one filed by Thomas Rogers in the intermediate
accounting of April 13th, 1897, were treated as the accounts
required in and by the order of removal, since taken together

they cover the period from September 1st, 1893, the date of the rendition of the accounts which had been settled and adjusted by the decree of March 16th, 1897, to the time of his removal.

In the meantime, and before the trial of this action took place, the proceedings before the surrogate continued upon the intermediate accounting resulting in a decree of the Surrogate's Court bearing date the 21st day of February, 1898, in which he settled and adjusted the accounts of the trustees from September, 1893, until the 23rd day of October, 1897, charging the trustees Cauldwell and Rogers personally with the amounts that had been misappropriated. From this decree an appeal was taken by the trustees to the Appellate Division, second department, and resulted in the entry of an order of that court on the 11th day of July, 1898, as follows: " Ordered and adjudged that the said decree appealed from be and the same is hereby reversed, so far as it charges Thomas Rogers with the liability for the misapplication of funds of the estate by William Cauldwell, prior to the 8th day of December, 1895, and in all other respects affirmed." (32 App. Div. 324.)    Subsequently a motion was made on the part of Mary J. Westerfield and Flora E. Rogers for a modification of the decree so as to permit a further hearing before the surrogate upon the question of the liability of Thomas Rogers for the moneys taken by William Cauldwell prior to December 8th, 1895, which motion was denied.    Thereupon a motion was made to the Surrogate's Court that the proceedings be opened and further testimony taken, and the surrogate, after hearing the parties, on the 20th day of March, 1899, granted the motion and ordered that the decree, as entered, be opened, and that each of the parties be permitted to present further proofs.    It appears that some evidence was taken by the surrogate, and then the proceedings upon the intermediate accounting appear to have rested so far as this record discloses.    It was, however, stated upon the argument and appears outside of the record that an appeal was taken from this order of the surrogate, and that subsequently it was

reversed by the Appellate Division, who then amended their order of reversal by permitting Thomas Rogers to give further proof in exoneration of his liability, but refused to permit further evidence to be given on behalf of the life tenants in the trust tending to show that he was liable. (*Matter of Westerfield*, 61 App. Div. 413, decided in May, 1901, after the judgment in this action had been entered.)

In the meantime the proceedings for an accounting by the trustees upon their removal proceeded before the surrogate, resulting in a decree dated August 30th, 1899, wherein their accounts were judicially settled up to the date of their removal, the surrogate holding Thomas Rogers personally liable for all of the moneys misappropriated by his cotrustee Cauldwell. From this decree an appeal was taken to the Appellate Division and there the following order was entered: " It is hereby ordered and adjudged that the said decree so appealed from be and the same hereby is reversed upon questions of fact as well as of law, with costs and disbursements to the appellants, and proceedings remitted to the surrogate for disposition, in accordance with the opinion of HATCH, J." (Reported, 48 App. Div. 542.) Upon this reversal certain questions were certified to this court, but inasmuch as each of the questions certified involved a question of fact under the evidence the appeal was dismissed. (163 N. Y. 209.) No further proceedings appear from the record to have been taken under that proceeding.

In the meantime this action appears to have been brought to trial before the referee appointed to hear, try and determine the same on the 5th day of July, 1899. The referee filed his report August 20th, 1900, upon which the judgment in this action was entered. It finds that Thomas Rogers is personally liable for all of the funds misappropriated by his cotrustee, and that the income of Thomas Rogers derived from the estate be appropriated by the trustee for the payment of the moneys so misappropriated. From this judgment an appeal was taken to the Appellate Division of the first department, which entered the following order: " Ordered,

upon the facts as well as the law, that this action and all the proceedings in it, including the appeals, be and are dismissed, with costs to the appealing defendants to be paid by the plaintiffs, and that all the proceedings in it, including the said judgment, be and are vacated and set aside." Upon this order a final judgment was entered from which the plaintiffs have appealed to this court. Mary Ann Rogers, the mother of the plaintiffs and Thomas Rogers, died August 10th, 1891. Thomas Rogers has since drawn from the residuary trust of his share therein $98,683.84.

We have thus stated briefly the history of a portion of the litigation that has taken place with reference to this estate. We have omitted several proceedings and orders, and appeals therefrom, which are not material upon the questions that we now have under review. That the moneys of these trust estates have been misappropriated by the trustees in the amount found by the referee is not controverted. The chief conten- tion has arisen over the liability of Thomas Rogers for the amount appropriated by his cotrustee, Cauldwell, prior to December 8th, 1895. The questions raised in the proceed- ings before the surrogate as to his liability for certain other items have practically been eliminated by the report made by the referee in this action, and it now appears to us that it is for the interest of the parties, as well as the public, that this litigation should be terminated, and if heroic treatment is necessary it should be applied.

The order of the Appellate Division herein is one that we are not familiar with. We have not in our practice met an order similar in form. It, upon the facts as well as the law, dismisses the appeals and all the proceedings, including the judgment, and then vacates them and sets them aside. The only jurisdiction that the Appellate Division had to review the judgment, it derived from the notices of appeals that had been served in the case; and when it dismissed the appeals it deprived itself of any further power or jurisdiction over the judgment or the proceedings in the action. Under the Code the Appellate Division may affirm, reverse or modify a judg-

ment brought before the court upon an appeal, and where it reverses upon the facts it may order a new trial, unless upon no view of the case could the facts be changed upon a new trial; in which case the court would be justified in ordering final judgment. The order states that it is made upon the facts as well as the law. Owing to the peculiar form of the order and our doubt as to its meaning, we have looked into the opinion for the purpose of ascertaining what was intended. Upon referring to it we find that the court declined to consider the case upon the merits, but vacated the judgment, for the reason that the Surrogate's Court had acquired jurisdiction of the proceedings for an accounting, and, therefore, the Supreme Court ought not to have entertained jurisdiction in this case. As to this question all the facts appeared of record and there was no controversy; therefore, there could be no reversal upon the facts. (*Otten* v. *Manhattan Railway Co.,* 150 N. Y. 395–400; *Hirshfeld* v. *Fitzgerald,* 157 N. Y. 166; *Griggs* v. *Day,* 158 N. Y. 1–9.)

We shall for the purpose of considering this question treat the dismissal of the appeals as not intended. In the first place, we recognize the rule to be as claimed by the Appellate Division, that where two courts have concurrent jurisdiction of the subject-matter the court first acquiring jurisdiction will be allowed to proceed with the case. This action, as we have seen, was brought on the 17th day of August, 1897. The only proceeding then pending in the Surrogate's Court was the intermediate accounting of the trustees which had been ordered to be filed from the date of their last accounting in 1893. This was not a final accounting and did not include the time that would intervene before the date of their removal. The Supreme Court had jurisdiction to settle and adjust accounts of trustees and to distribute trust estates. This was settled in *Matter of Ayrault* (81 Hun, 107; affirmed, 146 N. Y. 389). The complaint, as we have seen, demanded the removal of the trustees and that others be appointed in their places, and that Thomas Rogers' interest in the residuary estate be charged as liable to make good the amount of the

defalcation, with interest. In this action the children of Mrs. Westerfield and of Thomas Rogers had been made parties, and in the answers served it was alleged that a trust deed had been executed by Rogers to Cauldwell for the benefit of Rogers' wife and family. Here an issue was raised with reference to Rogers' interest in the estate, which the surrogate had no jurisdiction to try and determine. The Supreme Court alone had jurisdiction to annul or construe that instrument. It is true that after this action was brought other proceedings were instituted in the Surrogate's Court for the removal of the trustees on account of their misconduct in appropriating the funds of the trust estates, and thereby a part of the relief demanded in the complaint in this action was obtained in that proceeding, but it did not deprive the Supreme Court of jurisdiction to proceed with this action and to grant such further relief as had not been obtained in that proceeding. We, therefore, conclude that the Appellate Division improperly vacated the judgment.

As we have already stated, the substantial controversy between the parties arose out of the misappropriation of the funds of the estates by Cauldwell prior to the 8th day of December, 1895. At that time he had improperly drawn from the estates and applied to his own use the sum of $131,778.53. He then saw Rogers and told him of his misappropriation. Within a few days thereafter he deeded over to himself and Rogers, as trustees, certain real estate, and subsequently certain other property upon which he obtained from the estates, with Rogers' consent, other large sums of money for which Rogers unquestionably is liable. He contends, however, that he is not liable for the misappropriation prior to the 8th day of December, 1895, for the reason that he knew nothing about it and that he had been excluded from the management and care of the trust estates by his sisters, the plaintiffs in this action. This defalcation had been discovered prior to the bringing of this action, and it was one of the questions involved in the accounting then pending before the surrogate, known as the intermediate accounting, and the

16

Surrogate's Court then had jurisdiction to determine the rights of the parties and Rogers' liability to make good to the trust estates the amount so misappropriated. The surrogate held him liable, but the Appellate Division, as we have seen, reversed so much of the decree as held him liable for the money taken before the 8th day of December, 1895, but affirmed the decree of the surrogate in all other respects. Then, as we have seen, the Appellate Division refused to amend its order upon the application of these plaintiffs, and it subsequently reversed the order of the surrogate opening the proceedings to take further testimony. It will thus be seen that as to the liability of Thomas Rogers, prior to December 8th, 1895, the judges of the Appellate Division appear to have considered their decision final. Indeed, they have so stated in their opinion written upon the reversal of the order of the surrogate opening the case. In addition to this we have the decree of the surrogate taken upon the accounting which followed the removal of the trustees, in which he again held Thomas Rogers liable for the misappropriation of these funds. But this was again reversed by the Appellate Division upon the facts as well as the law, and the case was remitted to the Surrogate's Court for the purpose of taking evidence upon other questions which had been raised, but not upon the question of the liability of Thomas Rogers for the funds taken prior to the 8th day of December, 1895. The court again treated that question as finally determined.

It may be that this court would have reached a different conclusion with reference to the liability of Thomas Rogers had we the power to review the determination of the Appellate Division upon this question. The claim is made that the plaintiffs, the sisters of Thomas, had practically excluded him from having any care or control over the trust estates. This was a controverted question of fact, in which, under the Constitution of the state, the Appellate Division became the court of last resort, and the duty devolved upon that court of finally determining that question; and this court has no power to review the same, unless in case of a divided opinion, in which

case this court may determine as to whether there is any evidence to sustain the finding made.    We think, therefore, that the Surrogate's Court having acquired jurisdiction of that controversy prior to the commencement of this action, the determination of the Appellate Division reversing the decision of the surrogate became *res adjudicata,* and was binding upon the Supreme Court and the referee in the trial of this action.

All of the real estate and property of Cauldwell on December 8th, 1895, was liable to be appropriated for the satisfaction of the moneys that he had misappropriated from the trust estates.    Instead of reporting the defalcation to his sisters, Thomas kept it a secret for a period of a year and three months thereafter, endeavoring to make something out of the property turned over to him by Cauldwell, which would save his father-in-law from loss and disgrace.    He also joined in appropriating large sums of the estate in the way of betterments and in conducting a hotel business.    This he should not have done.    The property of Cauldwell should have been sold and the proceeds, if any, should have been applied upon the amount that had theretofore been improperly taken from the trust estates.

It further appears that after the defalcation had been discovered by these plaintiffs it became necessary to have additional sums of money used, in order to preserve the property that had been turned over by Cauldwell to the trustees, and that with their consent, or their attorneys, the sum of $25,000 was borrowed, which was subsequently paid out of the trust estates.

We think that the judgment of the Appellate Division should be reversed; and that the judgment entered upon the report of the referee should be modified by deducting from the amount found owing by Thomas Rogers the amount of $131,778.53, which had been appropriated by Cauldwell prior to the 8th day of December, 1895; and that the judgment herein directing a sale of the property turned over to the trustees by Cauldwell should be modified by adding thereto, that out of the proceeds of such property the amount

paid out by the new trustee for the preservation of the property after the removal of Cauldwell and Rogers, as trustees, with the consent of the plaintiffs, be first paid; and that the remaining proceeds of such property, if any, be applied upon the moneys appropriated by Cauldwell prior to the 8th day of December, 1895; and if any remains it be applied upon the joint indebtedness of the two trustees; and that the judgment as so modified be affirmed, with costs to these plaintiffs.

PARKER, Ch. J. (dissenting). The Appellate Division, having reached the conclusion that the commencement of this suit was an offense against orderly judicial procedure, held properly, in my view, that the trial court should have refused to take jurisdiction, and it necessarily follows that the discretion which the trial court could have exercised the Appellate Division of that court might exercise, and in this case properly did exercise.

If I am right in the proposition that the Supreme Court had, in view of the proceedings pending in another court involving the same questions, the right to refuse jurisdiction in its discretion, then it also follows that this court is without power to review that exercise of discretion.

Before the commencement of this action the powers of the Surrogate's Court of Westchester county had, by these plaintiffs, been invoked to pass upon questions affecting the administration of the estate, and the Surrogate's Court seems to have in the meantime made such decrees as were in the main satisfactory to the plaintiffs here, the petitioners there; but the trustees were aggrieved, and so an appeal from one of the decrees was taken to the second Appellate Division (*Matter of Westerfield*, 32 App. Div. 324), where a reversal was secured in two respects, one of which relates to an item referred to *infra*.

The action of the surrogate on the next hearing seems not to have been satisfactory for his decree was again reversed. (*Matter of Westerfield*, 40 App. Div. 610.)

A further hearing was had and the surrogate's decree thereon

was for the third time reversed. (*Matter of Westerfield*, 48 App. Div. 542.) After this the Appellate Division certified certain questions and authorized an appeal to this court, but we refused to consider the case on the ground that the reversal was upon questions of fact as well as law, and that answers to the questions certified depended upon facts established by the evidence from which different inferences might have been drawn, and so we dismissed the appeal.

The indications are that the controversy in the Surrogate's Court was as bitterly contested as the trial in the Supreme Court. There are some questions which the learned referee in this case undertook to pass upon as original propositions, just as if no court having jurisdiction of the subject-matter had ever decided them, but which it is now conceded were *res adjudicata.* Indeed, the majority opinion, while indicating a tendency to differ with the decision of the second Appellate Division on the appeal from the surrogate's decree as to the item of $131,778.53, nevertheless says, " We think, therefore, that the Surrogate's Court having acquired jurisdiction of this controversy prior to the commencement of this action, the determination of the Appellate Division reversing the decision of the surrogate became *res adjudicata* and was binding upon the Supreme Court and the referee in the trial of this action." But the referee, clothed for the time being with the authority of the Supreme Court, disregarded not only the decrees of the Surrogate's Court, but the several reviews. thereof by the second Appellate Division and marshaled the facts in carefully prepared findings, as if no proceedings had ever been had in a court having jurisdiction to pass upon most of the questions brought to his attention upon the hearing.

An examination of the decisions and the opinions in the Surrogate's Court and the Appellate Divisions indicates that these plaintiffs were, in those proceedings, far more successful in Surrogate's Court than at the Appellate Division. Indeed, those two courts differ as to the large item above mentioned. And it may well be that the second Appellate Division's posi-

tion on that item led the plaintiffs to press this suit for trial and final determination in the city of New York, thus enabling them to have the questions of fact reviewed by another branch of the Appellate Division, in the hope that it might take a view of the facts — which are strongly in controversy — more favorable to plaintiffs.

Confronted with this situation, the first Appellate Division proceeded to a careful review of the facts for the purpose of ascertaining whether it was the duty of the trial court to have refused to entertain jurisdiction of the suit, and to have dismissed it. And, having reached the conclusion that whether it should be dismissed or not rested in the exercise of the sound discretion of the Supreme Court, it determined that under the peculiar facts of this case that discretion should have been exercised by the dismissal of the complaint, and thereupon it exercised that discretion of the Supreme Court, as it rightfully might. In support of the position taken it marshaled the facts and cited authorities in the Supreme Court and in this court so carefully in its opinion that nothing can now be advantageously added, and I rest my position — that the Appellate Division had the power to reverse the judgment and dismiss the complaint, on the ground that the Supreme Court ought not, under the circumstances, to have taken jurisdiction of this suit — upon the opinion below.

My attention has not been called to any answer to the assertion by the court below that the power rested in the Supreme Court in the exercise of a sound discretion to refuse to take jurisdiction of this suit, in view of the fact that nearly — if not quite all — of the questions were already in controversy in another court; and it is safe to assume, I think, in view of the decision by this court on that subject, that no answer can be made to it. Hence it would seem to follow that there is no question in this case which this court can review, for it has been held again and again that it has not the power to review an exercise of discretion committed to the Supreme Court after its exercise by that court. Indeed, it has never been held otherwise.

If the views so far expressed be sound, it follows that the discussion of the merits should await the appeal to this court from an order of the second Appellate Division either affirming the final decree of the Surrogate's Court, or reversing it upon the law.

The judgment should be affirmed.

GRAY, O'BRIEN and BARTLETT, JJ., concur with HAIGHT, J.; PARKER, Ch. J., reads dissenting opinion; CULLEN and WERNER, JJ., absent.

Judgment reversed, etc.