BABETTE B. ISRAEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12976. Promulgated December 22, 1948.

*Elden McFarland, Esq.*, and *G. A. Donohue, Esq.*, for the petitioner.

*Thomas R. Charshee, Esq.*, for the respondent.

OPINION.

HARRON, *Judge*: The question presented by the pleadings arises under subsection (d) (3) (A) of section 162 of the Internal Revenue Code,[2] which was added to the code by section 111 (c) of the 1942 Revenue Act, and is applicable to years beginning after December 31, 1941. The subsection sets forth a rule to be followed in the application of subsections (b) and (c) of section 162.

The deficiency determined by the respondent is for the year 1943, and results from the inclusion in the income of petitioner of part of the 1943 income of five trusts. Petitioner was notified by a trustee of each trust, on January 3, 1944, of the amounts of her shares of the 1943 income of the trusts. However, the income was not distributed to her until March 15, 1944. The question to be decided is "Did the petitioner's share of the 1943 income of the trusts become payable to petitioner within the first 65 days of 1944, within the meaning of section 162 (d) (3) (A)?"

The answer to the question is to be found in the income provisions of the trusts. In construing the trusts we take into consideration the intention of the grantor as evidenced by his directions to the trustees, and the construction of the pertinent provisions made by the trustees for several years.

In our consideration of the meaning and purposes of the new subsection (d) (3) (A) we have given attention to the report of the Senate Finance Committee on the new statutory provision and to the new regulation which the Commissioner issued with respect to subsection (d) of section 162, which appears in section 29.162–2 of Regulations 111, pp. 664 to 673 (1943 edition, approved March 8, 1943). The part of section 29.162–2 which is pertinent to the meaning of the clause "income which becomes payable" is found on page 669 of Regulations 111; and the part of section 29.162–2 which applies to subsection (d) (3) is found on pages 672 and 673.

The question is posed by the parties without making any distinction between the income provisions of trust No. 1 and the income provisions of the other four trusts. Accordingly, we accept this posture

---

[2] SEC. 162. NET INCOME.

 * * * * * * *

(d) RULES FOR APPLICATION OF SUBSECTION (b) AND (c).—For the purposes of subsections (b) and (c)—

 * * * * * * *

(3) DISTRIBUTIONS IN FIRST 65 DAYS OF TAXABLE YEAR.—

(A) General Rule.—If within the first 65 days of any taxable year of the estate or trust, income of the estate or trust, for a period beginning before the beginning of the taxable year, becomes payable, such income, to the extent of the income of the estate or trust for the part of such period not falling within the taxable year or, if such part is longer than 12 months, the last 12 months thereof shall be considered, paid, credited, or to be distributed on the last day of the preceding taxable year. * * *

of the question, and refer hereinafter to the provision which is common to trusts Nos. 2, 3, 4, and 5, relating to distribution of income, as the trust provision which is to be construed.

Adolph C. Israel, the grantor of the trusts, directed that the trustees should pay all or part of the net income of each trust to petitioner, his wife, "in annual payments." There was no provision for the accumulation of any income for her benefit. The only income to be accumulated each year was the part, if any, which the trustees decided not to pay to petitioner; and the beneficiaries of any accumulations of income could be only persons other than petitioner who were minors at the time of such accumulation.

We think the trust provision makes it clear that the grantor intended to and did direct the trustees in the matter of the application of each year's income which the trusts received, and that the direction to pay all or part of the net income of the trusts to petitioner *in annual payments* means that each year's income of the trusts is to be paid to petitioner, either in whole or in part, early in the following year.

The trusts accounted for income on the calendar year basis, so that there can be no doubt that the income provision in the trusts relates to the income of the trust for each calendar year, and, since the trusts reported income on the cash basis, it is understood that the income for each calendar year was income it would account for on the cash receipts basis.

Also, it is clear that the grantor intended that the trustee of each trust should decide what was to be done with each year's income, but that the decision did not have to be made on or before the end of the year, i. e., December 31. The phrase, "the distribution or accumulation of the net income of *any year*," clearly means "the distribution or accumulation of the net income of *each year*." Petitioner does not contend otherwise. And the decision of the trustees as to the amount of *each year's* income which was to be distributed had to be made and notice thereof given not later than January 5 "of the following year."

Petitioner makes no argument contrary to the above, and it appears that there is no real dispute over the meaning of the income provisions of the trust, as set forth above.

The dispute is only about when the income of these trusts became payable for purposes of subsection (d) (3) (A), and petitioner finds room for disputing the respondent's determination in the alleged vacuum in the income provisions which do not specify when payment shall be made of the share of income which the trustees decide shall be distributed. Thus petitioner contends that, "since the trusts are silent as to when the annual distributions, if any, are to become payable to Babette B. Israel, the exact date thereof is left, within reasonable limits, to the discretion of the trustees."

We think it is reasonable to assume that the grantor of the trusts intended that the trustees should have a reasonable interval of time, after deciding about the share to be distributed, within which to make the payment of her share to the income beneficiary, and we agree with this part of petitioner's contention. But, it had been the practice of the trustees to make payment to petitioner at the same time they notified her of the amount of her distributable share. Thus, payments were made to petitioner on January 5, 1940, January 5, 1941, and January 5, 1942. The grantor of the trusts was a trustee of each trust until August 1941, so that we have evidence of the grantor's intention from his own administration of the trusts. We have held that a long standing interpretation of a trust by the interested parties is entitled to considerable weight, *Mary Helen Cadwalader*, 27 B. T. A. 1078, 1082; and we think we must give much weight in this proceeding to the procedure which the grantor of the trusts followed when he was a trustee and administered his own trusts. Furthermore, 60 days appears to have been ample time within which to make payment, nothing being shown to the contrary, so that we believe that 60 days marked the limit of a reasonable period, after January 5, within which the income could be paid.

Petitioner's theory, that the grantor of the trusts intended to give the trustees rather wide discretion in the matter of the time for making distribution of her share of each year's income of the trusts after the close of the year, is not consistent, in our opinion, with the grantor's direction to the trustees to make their decision about the amount of each year's income to be distributed not later than five days after the close of the year. This direction required a prompt decision, and a reasonable view would be that the grantor intended that distribution would likewise be prompt. That interpretation is one which we think is to be implied from the direction to make the decision not later than five days after the close of the year. Also, support for this interpretation is to be found in the direction to pay all or part of the net income to the petitioner "in annual payments," and to accumulate the balance, if any, for others. Complete disposition of each year's income was made; i. e., each year's income was to be allocated among petitioner and minors, but petitioner's share was to be *paid* to her.

Under the theory of petitioner, she had no present right to her share of the trust income when the trustees decided what her share was and gave her notice of their decision. She contends, in effect, that she had no present right to the income until the *date of payment and distribution* fixed by the trustees. We do not agree with this theory, and believe it represents a clearly erroneous construction of the income provisions of the trusts. Petitioner clearly had a present right to the trust income upon the trustees' decision of what part would be distributed to her, and that decision could be made no later than the

fifth day following the end of a trust's year. The decision of the trustees put upon them a fixed obligation to distribute a definite part, or all, of the trust income to petitioner, and after the decision of the trustees was made petitioner's share of the trust income could be paid to her, and she had a right to demand payment.

The meaning of the word "payable" is not always the same in ordinary or in legal usage. The issue in this proceeding seems to present conflicting views of the parties as to the meaning of the term "payable" in paragraph (3) (A) of section 162 (d). Dictionary definitions of the word cover various meanings and do not provide a solution of the conflicting views which appear to be involved in the respective arguments of the parties. Furthermore, we give heed to the admonition of Judge Learned Hand, stated in *Cabell* v. *Markham*, 148 Fed. (2d) 737, 739, "not to make a fortress out of the dictionary." The Commissioner construes the phrase "income which becomes payable" to mean "income to which the legatee, heir, or beneficiary has a present right, whether or not such income is actually paid," in the new regulation under the new subsection (d) of section 162, part of which is set forth in the margin.[3] This interpretation is entitled to some weight, as was observed in *Carlisle* v. *Commissioner*, 165 Fed. (2d) 645. See also *Federal Deposit Insurance Corporation* v. *Tremaine*, 133 Fed. (2d) 827, 830.

We do not understand petitioner to dispute the correctness of the Commissioner's regulation which construes the term "payable" to mean having a present right to income. Petitioner argues, rather, that the trustees were given the discretion to determine when petitioner's right to the income became fixed, and that they determined that matter by notifying her of the date on which her distributable share, as determined by them on or before January 5, would be paid. We must reject this argument. As stated above, we construe the trust provisions to mean that both petitioner's right to the income and the trustee's obligation to make distribution became fixed when he decided what amount he would distribute to petitioner. The additional decision of the trustee as to the *date of payment*, did not in any respect postpone the fixing of petitioner's right to receive the income. Accordingly, the trust income in question became "payable" to petitioner within the first 65 days under paragraph (3) (A) of section 162 (d).

[3] SEC. 29.162–2 [Regulations 111, p. 669]. ALLOCATION OF ESTATE AND TRUST INCOME TO LEGATEES AND BENEFICIARIES.—

 * * * * * * *

(*b*). *Allocation among income beneficiaries and legatees.*—

 * * * * * * *

As used in section 162, the term "income which becomes payable" means income to which the legatee, heir, or beneficiary has a present right, whether or not such income is actually paid. Such right may be derived from the directions in the trust instrument or will to make distributions of income at a certain date, or from the exercise of the fiduciary's discretion to distribute income, or from a recognized present right under the local law to obtain income or compel a distribution of income. * * *

The courts have frequently distinguished the term "payable" from the term "paid" as having an essentially different meaning, and as meaning that which is due or owing, rather than that which is paid. See *In re Coleman's Estate*, 65 Pac. (2d) 467, 469. We think that it was intended in subsection (d) (3) (A) that the determinative fact is the date when income becomes *payable* and not when it is actually distributed and paid.

The purpose of paragraph (3) of the new subsection (d) was stated in the report of the Finance Committee, Rept. No. 1631, 77th Cong., 2d sess., p. 71, et seq., to be as follows:

Paragraph (3) of section 162 (d) is designed to remove problems arising in cases in which amounts are paid, credited or to be distributed shortly after the close of the taxable year of the estate or trust. Under existing law such arrangements give rise to tax avoidance, for example, *by placing the tax on the trust for income which is shortly after the close of the taxable year of the trust to be distributed to the beneficiary.* Under section 162 (d) as added in the House bill this tax avoidance would be prevented·but harsh results might occur in some cases by reason of the full amount to be distributed being considered distributed out of income for the year of the distribution. Section 162 (d) (3) as proposed to be added by your committee provides that in cases in which within the first 65 days of any taxable year of the estate or trust beginning after January 1, 1942, income of the estate or trust for a period beginning before the beginning of the taxable year becomes payable, the income for the part of such period not falling within the taxable year is considered to be paid, credited, or distributed on the last day of the preceding taxable year. * * * [Italics added.]

It is our view of the income provisions of the trusts before us, as heretofore stated, that whatever part of each year's income of the trusts should be determined by the trustees to be distributable to the income beneficiary was intended to be distributed to her shortly after the close of the year of each trust. Therefore, the situation here is exactly the type which paragraph (3) of subsection (d) was designed to cover, and the purpose was to provide that in such cases the trust income was to be taxed to the beneficiary, and was not to be taxed to the trust.

The purpose of paragraph (3) of subsection (d), as indicated in the report of the Finance Committee, reflects the principle which the administrative authorities have understood to be basic. In commenting on section 111 of the Revenue Act of 1942, which added the new subsection (d) to section 162 of the code, the following is stated (see G. C. M. 24702, 1945, C. B. 241, 242):

The general statutory plan with respect to estates has been to tax in some way the whole net income of the estate (*Helvering* v. *Julia Butterworth, et al*, 290 U. S. 365, * * *), that is, the income is either taxed to the estate as a separate entity or to the legatee to whom the income is paid. The basic principle underlying section 111 of the Revenue Act of 1942 is to impose the tax, within stated limitations, *upon the person who enjoys the income.* * * * [Italics added.]

It is held that the petitioner's distributable share of the 1943 income of the trusts became payable to petitioner within the first 65 days of 1944, within the meaning of paragraph (3) (A) of section 162 (d), and that, therefore the sum of $37,384.91 has been properly included in petitioner's income for 1943. The trustees should have treated such trust income as "paid, credited, or to be distributed" on the last day of 1943, under the provisions of paragraph (3) (A).

A further question is presented. The trustees paid $27,355.30 Federal income tax for 1943, as the tax owed by the trusts on the entire trust income for that year. Respondent included this amount, also, in petitioner's income for 1943. (He made a like determination for the year 1942, see footnote 1, findings of fact.) No explanation for this part of the respondent's determination was given in the statement attached to the notice of deficiency. On brief, respondent's contention is that the income of the trusts which was applied to an overpayment of the tax liability of the trusts should be regarded as income which was distributable to petitioner. It is respondent's theory, evidently, that part of $27,355.30 (the part which in fact represents overpayment of the taxes of the trusts), should be held to be, also, income which became payable to petitioner within the first 65 days of 1944, and, hence, taxable to her.

Respondent's theory finds no support in the income provisions of the trusts. They provide for the application of the *net income* of the trusts remaining after the payment of all of the expenses of the trusts, including taxes. Since the trustees were required to determine the amount of petitioner's share of each year's net income not later than January 5, a date which is well in advance of the date on which the returns of the trusts would have to be filed, the trustees were able to estimate the net income of the trusts after all deductions and taxes, and to make their decision of the amount of petitioner's distributable share with full consideration of what taxes might be, depending upon the deduction allowable to the trusts under section 162 for the amount to be distributed to petitioner. Any error which the trustees made in 1944 in estimating the correct taxable net income of the trusts for 1943, under the provisions of section 162, can not enlarge, retroactively, the petitioner's distributable share of the 1943 trust income, because of any refund which the trusts will doubtless receive, now, for overpayment of taxes of the trusts for 1943, on the basis of our holding in this proceeding. Such refund may fall into the accumulation of income of the trusts for 1943 for the minor beneficiaries, as part of the 1943 income which was *not* distributed to petitioner under the terms of the trusts, since the trusts do not allow the accumulation of any income for petitioner. Also, the trustees, having determined on January 3, 1944, the amount of the 1943 income of the trusts which

would be and which has been distributed to petitioner, are now foreclosed from making any further determination with respect to 1943. In any event, petitioner can not be taxed on income which she has not received.

Petitioner is not seeking to have taxes paid by the trustees of the trusts, to the extent any overpayment has been made, offset against taxes due from her, under any theory of equitable recoupment, which attempt, if made, would not be successful. See *Leslie H. Green*, 7 T. C. 263, 278, and cases cited therein.

The contention of the respondent on this issue is rejected, and it is held that it was error for the respondent to include all or part of $27,355.30 in petitioner's income for 1943.

Our conclusions under both issues are made with respect to the taxable year 1942 as well as 1943, which are covered by the pleadings, the discussion of the questions having been confined to the facts as they apply to the year 1943 as a matter of convenience. The questions are common to both years, as are the facts, except as to the dollar amounts of income and taxes paid by the trusts. Because of the computations which are involved for both 1942 and 1943 under the forgiveness feature of the Current Tax Payment Act in computing a taxpayer's liability for tax for both years, it is necessary to make holdings in this proceeding for the year 1942 as well as 1943. Accordingly, it is held that the respondent properly included trust income for 1942, in the amount of $43,122.89, in petitioner's income for 1942, under section 162 (d) (3) (A); and it is held, further, that the respondent erred in including all or part of $27,380.23 (the amount of taxes of the trusts) in petitioner's income for 1942.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DISNEY, *J.*, dissenting: Trust No. 1 did not authorize notice to the petitioner, not later than January 5, of income to be distributed. Nevertheless the trust has been treated the same as the others. I can find no reason to disregard this difference. If it is not disregarded, trust No. 1 is clearly seen to involve discretion in the fiduciary as to distribution or accumulation of income, and, under section 162 (c) of the Internal Revenue Code, deduction could be allowed only of the amount "properly paid or credited during the year" to legatee, heir, or beneficiary. Nothing indicates such payment or credit during the taxable year.

As to the other trusts, this is to me a case of not giving ordinary significance to plain language. I can not find the income here involved "payable" to the petitioner within the first 65 days of 1944 under section 162 (d) (3) (A) of the code within any common connotation

of the term. The trustees decided that the amount was not payable until March 15, outside the 65-day limit. I would sustain the petitioner on the matter. Therefore, I respectfully dissent.