Frederick M. Tobin Trust, John J. Krez, Trustee v. Commissioner.
Tobin Trust v. Commissioner
Docket No. 27148.
United States Tax Court
1951 Tax Ct. Memo LEXIS 3; 10 T.C.M. (CCH) 1251; T.C.M. (RIA) 51372; December 29, 1951
Sandow Holman, Esq., for the petitioner. Ellyne E. Strickland, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax against petitioner of $10,494.70 for 1944 and $10,552.38 for 1945. The question is whether petitioner is entitled to a deduction for an alleged $17,000 distribution in each year to a beneficiary of the trust. Findings of Fact Petitioner, the Frederick M. Tobin Trust, was established by and administered pursuant to the terms of a trust indenture executed on December 20, 1939, between Frederick M. Tobin as trustor and John J. Krez as trustee. It filed income tax returns for the years involved with the collector for the first district of Illinois. The *4 trustor's purpose in establishing petitioner, as recited in the trust indenture, was "* * * to place certain of his property in trust for the use and benefit of his beloved wife, Agnes K. Tobin * * * in order to provide for her comfort and convenience during her lifetime, and for his [four] children * * *." That instrument further provides as follows: "(5) It is especially provided that if at the time of any gift, transfer and delivery of any property by the Trustor to the Trustee any of such property is subject to any mortgages, liens or charges or is held by any person or corporation as collateral security for any indebtedness, then such gift, transfer or delivery shall be subject to such mortgages, liens, charges or indebtedness and the Trustee hereof, as such, by the acceptance of such gift, transfer, or delivery, assumes and agrees to pay such mortgages, liens, charges or indebtedness from the income or assets of this Trust, and the Trustee shall thereafter pay from the net income from the trust property all amounts which may be then or may thereafter become due and payable upon such mortgages, liens, charges or other indebtedness for which such property is security, it *5 being understood and agreed that preference shall be given to such payment from income, and it being further understood and agreed that the Trustee shall have full power in his discretion to expend all income from the trust property for the payment of such mortgages, liens, charges or indebtedness to the exclusion of any rights of any of the beneficiaries hereof until all such mortgages, liens, charges or indebtedness have been fully paid, released and discharged. * * *
"(8) During the Annuitant's lifetime the Trustee shall, from the property in this Trust, pay to her an annuity in the amount of Fifty Five Hundred and No/100 ($5500.00) Dollars per annum, payable in so far as is practical in substantially equal monthly installments. * * *
"(41) The Trustee shall have full power in his discretion, should he consider it necessary or advisable or for the best interests of this Trust, to borrow any funds upon any of the property in this Trust, including any insurance policies which may be placed herein, or continue, assume or renew any loans which may be secured by any of said property, whether said loans were in existence at the time said property is placed in this Trust *6 or whether said loans are made originally by the Trustee, and to borrow further against any of said property for the purpose of repaying any of said loans; to exercise any and all voting rights of any stocks or other securities which are a part of the property in this Trust and to appoint any person, including the Trustor, as his proxy for the purpose of voting said stocks or other securities; to invest any part of the property in this Trust in any loans to any person, firm or corporation, including the Trustor and the Annuitant, upon such terms and conditions and security as the Trustee may consider adequate for the protection of this Trust. * * *
"(44) In case the Trustee in his discretion considers it necessary or advisable for the proper care, comfort and support of the Annuitant, he may increase or decrease the annuity payable to her hereunder, provided, however, that said annuity shall in no case be less than Fifty Five Hundred and No/100 ($5500.00) Dollars per annum or greater than Fourty Four Thousand and No/100 ($44000.00) Dollars per annum. It is especially provided that the Trustee shall have full power in his discretion to postpone the payment of any annuity to the *7 Annuitant hereunder (both as provided in this paragraph and in Paragraph Eight (8) hereof) until any and all mortgages, liens, charges and indebtedness secured by any of the property of this Trust shall have been first paid." Petitioner's corpus consisted of 4,250 shares of common stock of the Albany Packing Co., Inc. At the time the trust indenture was executed this stock was pledged as collateral security for loans made to the trustor by the First Trust Company of Albany and by the Liberty Bank of Buffalo in the total amount of $208,825.34. The stock had a value in excess of this total indebtedness. In accordance with the power vested in him by the Trust indenture the trustee applied all trust income to reduction of the indebtedness secured by the stock. When cash was required for any other purpose the trustee would borrow the money needed. The trustee obtained a loan of about $150,000 in January 1942 from the Genesee Valley Trust Company of Rochester, New York, (hereinafter sometimes referred to as Genesee) and paid off the balance owing on the indebtedness due the First Trust Company of Albany and the Liberty Bank of Buffalo. This loan was evidenced by a demand note executed *8 by the trustee and endorsed by the trustor. Thereafter the stock composing the corpus was held by Genesee. On July 1, 1943, a new demand note was executed by the trustee in payment for the first Genesee loan. Prior to 1944 the trustee had not undertaken to make any payment to Agnes K. Tobin (hereinafter referred to as the annuitant) out of either principal or income. On December 26, 1944, the trustee borrowed $17,000 from Genesee. Within the month there was mailed to the annuitant petitioner's check dated December 27, 1944, for $17,000. The trustor's accountants credited petitioner's distributed income account with $17,000. The check endorsed by the annuitant was stamped paid January 4, 1945. On receipt of the check the annuitant called the trustee by telephone and expressed her pleasant surprise. When in the course of the conversation the trustee mentioned petitioner's indebtedness still outstanding the annuitant offered to return the money to petitioner in exchange for its interest-bearing note. This offer was implemented by the annuitant's letter dated January 2, 1945, addressed to the trustee which read in part as follows: "Kindly notice enclosed check for $17,000 which I am *9 loaning to the Frederick M. Tobin Trust. Will you kindly send your note for same?" Her check for $17,000 of the same date drawn to the order of the trustee on behalf of petitioner was enclosed. Petitioner's promissory note dated January 2, 1945, bearing interest at three per cent and payable on or before the end of one year was executed by the trustee and sent to the annuitant as directed. Two transfers were made to the annuitant in 1945, one for $3,000 by petitioner's check dated April 6, and the other for $14,000 by the petitioner's check dated December 24. These checks bear endorsements dated April 13 and December 27, 1945. As on the previous transfer appropriate entries were made recording each item in the trust's distributable income account. Again the annuitant after receipt of the latter check sent her check for $14,000, dated December 31, 1945, as a loan to the trustee. That check bears the trustee's endorsement dated January 7, 1946. She received in exchange therefor petitioner's promissory note, dated January 2, 1946, for $14,000 bearing interest at three per cent and payable on or before the end of one year. At the time of the first transfer to the annuitant in December *10 1944 it was the trustee's understanding that the annuitant had no apparent need for the money. Although the trustee considered the tax consequences he was not motivated entirely in making the transfer by the contemplated tax effect. On December 31, 1944, petitioner was indebted to the Genesee Valley Trust Company in the amount of $94,516.15. That indebtedness had been reduced to $84,000 by December 31, 1945. By its check dated June 7, 1946, petitioner paid the two notes in the total sum of $31,000 owed to the annuitant and $915.10 interest. Petitioner's net income for the calendar year 1939 to 1945, inclusive was as follows: Year
Amount
1939
$21,250.00
1940
34,434.02
1941
17,933.69
1942
8,365.40
1943
32,443.13
1944
32,959.48
1945
33,982.50 On January 2, 1945, at the time the first note was issued to the annuitant, petitioner's net worth was at least $600,000. At the time of the issuance of the second note the following January 2, its net worth had increased to approximately $650,000. Opinion We entertain no doubt that petitioner trust's actual payment of the disputed funds to its beneficiary, coupled with the existence of trust income more than *11 adequate to cover the distribution, rendered the beneficiary liable to tax on the amounts so received. Smith v. Westover ( C.A. 9), 191 Fed. (2d) 1003 (Oct. 10, 1951). Under these circumstances it was not the purpose of section 162(c), Internal Revenue Code, [1] to tax the trust as well. Helvering v. Butterworth, 290 U.S. 365; Preliminary Report of Subcommittee of Ways and Means Committee, 73rd Cong., 2d Session, p. 20. "'* * * The basic principle * * * is to impose the tax, within stated limitations, upon the person who enjoys the income. * * *'" Babette B. Israel, 11 T.C. 1064, 1073. And the fact that after receipt and without pre-arrangement the beneficiary advanced comparable sums to petitioner as interest-bearing loans is entirely inadequate in our view to affect the tax liabilities of either trust or beneficiary. We regard the deficiency as erroneously determined. *12 Decision will be entered for the petitioner. Footnotes
1. "SEC. 162. NET INCOME. "The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that - * * *
"(c) * * * in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary;"↩